NORMAN M. CLAPP, Secretary, Department of Transportation
You have asked my opinion as to the interpretation of certain statutes relating to the weighing of motor vehicles transporting peeled or unpeeled forest products cut crosswise. Section 348.15
(2), Stats., sets forth maximum allowable weights for motor vehicles. Section 348.15 (3), Stats., sets forth certain tolerances which are *Page 101 
allowable, for enforcement purposes only, above these maximum weights. In this respect, sec. 348.15 (3) (b) 2, Stats., provides that no summons or complaint shall be issued unless:
"The gross weight imposed on the highway by the wheels of any one axle exceeds 21,500 pounds or, for 2 axles less than seven feet apart, 35,000 pounds or, for groups of 3 or more consecutive axles more than 9 feet apart, a weight of 4,000 pounds more than is shown in par. (c) or permitted under par. (d) when transporting peeled or unpeeled forest products cut crosswise. This section shall not apply to the national system of interstate and defense highways."
This statute provides certain greater weight tolerances where the vehicle is transporting peeled or unpeeled forest products cut crosswise.
Section 348.15 (5), Stats., sets forth the methods to be followed in weighing vehicles on scales which have been tested as there specified. Section 348.15 (5r), Stats., reads:
"Irrespective of sub. (5), in determining overweight under sub. (3) (b) 2 the results of weighing by means of portable scales shall be admissible as evidence, but the operator may request reweighing on a certified stationary scale. Portable scales shall be checked by weighing in comparison to certified stationary scales within 10 days immediately prior to any weighing operation. In all cases where a vehicle is weighed on a certified stationary scale, axles less than 6 feet apart shall be weighed as one unit."
Your first question is whether the last sentence of this section, relating to weighing axles less than 6 feet apart as one unit, applies only to determining overweight under sec. 348.15
(3) (b) 2, Stats. The answer is "yes."
The language of subsec. (5r) states that it is to be used in "determining overweight under sub. (3) (b) 2." This is clear and unambiguous. By this language, subsec. (5r) is limited to this one purpose. No other purpose is specified by subsec. (5r). Also, this statute provides that it is to be applied "irrespective of sub. (5)." This clearly means that the weighing methods of subsec. (5) are not mandatory when the officer is using portable scales under subsec. (5r). *Page 102 
Subsection (5r) further specifies that the "results of weighing by means of portable scales shall be admissible as evidence." This clearly means that the state can prove its case by offering this evidence. Of course, the weight of this evidence is for the trier or fact to decide, but this does not affect its admissibility. Subsection (5r) further specifies that "the operator [of the vehicle] may request reweighing on a certified stationary scale." This is obviously to provide a check on the accuracy of the portable scale. However, this provision in no way affects the admissibility of the results of the weighing on the portable scale.
The next provision of subsec. (5r) is that portable scales shall be checked by weighing in comparison to certified stationary scales within 10 days immediately prior to any weighing operation on the portable scales. This is obviously to insure their accuracy. The last sentence of subsec. (5r) provides that in "all cases where a vehicle is weighed on a certified stationary scale, axles less than 6 feet apart shall be weighed as one unit." Weighing such axles only as one unit would make it impossible to determine on such stationary scale the separate weight of each axle.
Attorneys for the Wisconsin Motor Carriers Association have argued that this last sentence of subsec. (5r) applies to all cases regardless of the nature of the property being transported, and that this last sentence is not limited in application to the weighing of vehicles hauling the forest products specified in subsec. (3) (b) 2. Under such an interpretation, it would be impossible to determine single axle weights in any case where such axles are less than 6 feet apart, regardless of the commodity hauled. Thus, truckers could overload such single axles without penalty, because the single axle weight limitations could not be enforced against them. The answer to this contention is that if the legislature had intended this restriction to apply to all weighing operations, regardless of the property being transported, they would have placed such restriction in subsec. (5) which does apply to all weighing operations regardless of commodity hauled.
Even though this provision was not placed in subsec. (5), but was instead placed in subsec. (5r), these attorneys continue to argue that it has the same effect as if it had been placed in subsec (5), because it contains the words "in all cases." If this were correct, this would *Page 103 
have the effect of repealing, by implication, the single axle weight restrictions provided in sec. 348.15, Stats., in all cases where axles are less than 6 feet apart. Since repeal by implication is not favored, State v. Dairyland Power Cooperative
(1971), 52 Wis.2d 45, 51, 187 N.W.2d 878, I conclude that the legislature never intended such result.
Clearly, the weighing limitation found in the last sentence of subsec. (5r) applies only to the weighing of axles less than 6 feet apart, where the vehicle is hauling the forest products specified in subsec. (3) (b) 2, and where the weighing operation is conducted on a certified stationary scale. This limitation is not applicable to weighing on portable scales. This language merely makes it impossible for the trucker, whose vehicle has been weighed on portable scales, to have the advantage of reweighing the single axles on a stationary scale to double check the weights previously determined on the single axles by the portable scales. This lack of ability to recheck the single axle weights, previously determined on the portable scale, in no way interferes with the admissibility in evidence of the results of such single axle weighing on the portable scale. Subsection (5r) makes it abundantly clear that "the results of weighing by means of portable scales shall be admissible as evidence." There is no reason to assume that subsequent reweighing on stationary scales is in any way a condition to the admissibility of the evidence obtained by weighing on portable scales.
You are, therefore, advised that where a vehicle is transporting peeled or unpeeled forest products cut crosswise, your law enforcement officers may weigh single axles less than 6 feet apart on portable scales, which have been tested for accuracy within 10 days prior to such weighing, and that evidence thereby obtained is admissible to prove a charge of single axle overweight
In connection with the writing of this opinion, we have been asked by the Wisconsin Motor Carriers Association to consider the briefs filed with the County Court of Portage County in a case titled State v. Consolidated Freightways Corp. There the motor vehicle involved consisted of a truck tractor and semitrailer, having a total of five axles. The length of the stationary scale platform in relation to the distances between the various axles was such that the second of the five axles could not be weighed alone. However, axles 2 and 3 *Page 104 
were weighed together and axle 3 was weighed alone. Then the weight of axle 3 was subtracted from the total weight of axles 2 and 3 to give the weight of axle 2. The trucker was charged with an overweight on axle 2. Axles 2 and 3 were less than 6 feet apart. The defendant moved to dismiss the charge because of the last sentence of sec. 348.15 (5r), Stats., which provides that such axles shall be weighed as one unit. It was argued that, since such axles must be weighed together, the charge of overweight on axle 2 must be dismissed because its weight was determined by subtracting the weight of axle 3 from the weight of axles 2 and 3 weighed together. We are informed that the court denied the motion. We agree with the court in this respect. We see no reason why the weight of axle 2 could not be arrived at by this method. The only question is whether this constitutes "good weighing technique" as prescribed by sec. 348.15 (5), Stats. Even if the court ruled that this method of obtaining the evidence of the weight of axle 2 was not in compliance with sec. 348.15 (5r), Stats., such evidence is still admissible, and may not be excluded, because no constitutional right was violated. Ware v.State (1930), 201 Wis. 425, 230 N.W. 80; State v. Hochman (1957),2 Wis.2d 410, 86 N.W.2d 446. Any objection to such evidence would go only to its weight and not to its admissibility.
Your second question reads:
"Is the definition of `peeled or unpeeled forest products cut crosswise' limited to products derived from the first action at the stumpage?"
In this respect, you have furnished the following background information:
"As to definition, the words `peeled or unpeeled forest products cut crosswise' were included in an omnibus bill introduced into the 1959 legislature by the Motor Vehicle Department to eliminate confusion caused by the terms `manufactured forest products' and `unmanufactured forest products'. During discussion in preparation of the bill by department personnel it was agreed that the term `unmanufactured forest products' was limited to those products derived from the first action at the stumpage, specifically cutting necessary to fell the tree, cutting it crosswise into transportable lengths, and peeling the logs where necessary. Any further action on *Page 105 
the logs produced a manufactured product. This bill became Chapter 542, Laws of 1959, and included the change of wordage as indicated above. Since that time enforcement action by this department has been based on that interpretation.
"Defense attorneys have been successful in convincing some courts that other forms of forest products which we consider as `manufactured' should be included in the term `peeled or unpeeled forest products cut crosswise'. Examples of this are wood chips, rough lumber, ties, slabs, etc. Other courts have not accepted this interpretation, ruling that such products are not included in this category . . . ."
From this explanation, it is apparent that your question is whether the words "peeled or unpeeled forest products cut crosswise" are limited to forest products which are cut at the stump, trimmed of branches, cut crosswise into transportable lengths, and peeled where necessary. It is my opinion that this question must be answered in the affirmative, and that any further processing of this forest product raw material such as by cutting it into wood chips, or sawing it lengthwise into boards, ties, or slabs constitutes partial manufacture of such raw material. The products so produced are not included within the the words "peeled or unpeeled forest products cut crosswise."
I reach this conclusion for the following reasons. The provisions of sec. 348.15 (3) (b) 2, Stats., specify a greater allowable weight when transporting such forest products than is allowed under sec. 348.15 (3) (b), Stats., when transporting other products generally. Thus, the former section constitutes a special exception from the more stringent requirements of the latter section which is the general provision. An exception must be strictly construed. One claiming the benefit of an exception must show that he comes within it. All doubts must be resolved in favor of the general provision and against the granting of the exception. Thus where an exception is ambiguous, any doubt must be resolved against the person claiming the exception. In 82 C.J.S. Statutes, 382, Pages 891-893, the law is stated as follows:
"Exceptions, in a statute, as a general rule, should be strictly construed, and, at the same time, exceptions should be reasonably construed; they extend only as far as their language fairly warrants. *Page 106 
And all doubts should be resolved in favor of the general provision rather than the exception. A person claiming the benefit of the exception must establish that he comes within it. . . ."
This rule is applicable even in criminal cases. In 22A C.J.S.Criminal Law, s. 572, pages 316-317, it is said:
"In general, accused has the burden of proving, as a matter of defense, that he is within an exception in the statute creating the offense, at least, where such exception is not part of the enacting clause, but is a proviso thereto, or is in fact not part of the description of the offense, as where the exception is not part of the crime but operates to prevent the act otherwise included in the statute from being a crime. Accordingly, the prosecution owes no duty to prove that accused is not within the exception. . . ."
You also state that since this language, relating to "peeled and unpeeled forest products cut crosswise," was introduced into the statute by ch. 542, Laws of 1959, enforcement action by your department has been based upon your interpretation that this language applies only to forest products derived from the first action at the stumpage as explained above. This constitutes administrative construction of the statute. In a long line of cases, the Supreme Court of this state has held that long continued administrative construction of a statute, by the state agency charged with enforcement thereof, is entitled to great weight when a court is required to construe the statute.Chevrolet Division, G.M.C. v. Industrial Comm. (1966), 31 Wis.2d 481,488, 143 N.W.2d 532.
From sec. 348.15 (3) (b) 2, Stats., it is apparent that the legislature intended to allow certain excess weight limitations to truckers transporting certain forest products from the forest to the sawmill, papermill, or railroad siding. Since pulp logs are peeled in the forest before being transported to the paper mill, it was necessary to allow that much processing. Since trees must be cut down, the branches trimmed off, and the trunks cut into transportable lengths, it was necessary to allow that much processing. In this respect, the key words are "cut crosswise." This means cut crosswise at the stump and into transportable lengths, but no further. Obviously, further cutting lengthwise into boards timbers, ties, or slabs, or grinding into wood chips constitutes further processing of the raw material beyond the "cut crosswise" *Page 107 
stage. "Cut crosswise" means crosswise and no more. Any further processing beyond the "cut crosswise" stage, deprives the trucker of the special excess weight limitations provided under sec.348.15 (3) (b) 2, Stats.
RWW:AOH