STATE, Respondent, vs. HOCHMAN, Appellant.

*November 8—December 3, 1957.*

For the appellant there were briefs by *Morton Gollin,* attorney, and *Herbert S. Bratt* of counsel, both of Milwaukee, and oral argument by *Mr. Gollin.*

For the respondent there was a brief by the *Attorney General* and *William A. Platz,* assistant attorney general, *William J. McCauley,* district attorney of Milwaukee county, and *Hugh R. O'Connell,* special assistant district attorney, and oral argument by *Mr. Platz* and *Mr. O'Connell.*

STEINLE, J. There is sharp conflict as to material particulars in the evidence adduced by the state and that presented on behalf of the defendant. The weight and credibility of the evidence were for the court to determine. Of record there is evidence which the court was entitled to deem credible to the effect that the defendant owned and operated a retail novelty shop in Milwaukee; that Police Officer James Psarros, while on police duty and in plain clothes, visited the defendant's store on five occasions between January or February, 1955, and April, 1955, with a view of attempting to purchase some obscene items; that the officer's identity as a member of the Milwaukee police department was not revealed to the defendant; that on the first of such visits the police officer introduced the subject of desiring to purchase books and playing cards containing obscene pictures; that the defendant referred to such merchandise as "hotter stuff" and told the police officer that he only sold it to his better customers, and invited the officer to become a regular customer so that he would get to know him better; that on the occasion of the first visit the defendant requested the police officer's name, address, etc., which information was given; that on April 14, 1955, when the police officer visited the store, the defendant told him that if he would return on the following day, the defendant would sell him "some items;" that on April 15, 1955, when the officer went to the store, the defendant told him that he was about fifteen to twenty minutes late in coming,—that he does not keep the "hot stuff" in the store,—that he had sold it to another customer,—that as to delivery it is necessary that the officer be at the store at the exact time when the defendant picks it up from a salesman; that on April 22, 1955, the defendant telephoned to the officer at his home and stated that he had the items and that the officer could call for them; that after receiving the telephone message, the officer proceeded to the defendant's establishment; that the officer inquired as to

whether the defendant had the "stuff" and the defendant gave an affirmative answer; that after waiting until there were no other customers in the store, the defendant went to a rear counter from which he obtained a bag containing the books and playing cards in question, and delivered the same to the officer who paid the price asked, to wit, $15; that the officer then opened the bag, examined the items, observed that they were obscene, and placed the defendant under arrest.

The defendant contends that: (a) The acts of the officer constituted entrapment; (b) the books and playing cards ought to have been excluded under the motion to suppress said evidence on the ground that it was obtained by entrapment; (c) with the books and playing cards excluded from evidence, there was insufficient basis for the judgment of conviction.

The state maintains that the defendant was not "entrapped." It also submits that under proper procedure the issue of entrapment may not be raised by a motion to suppress the evidence.

Entrapment is the inducement of one to commit a crime not contemplated by him for the mere purpose of instituting criminal prosecution against him. See *State v. Marquardt* (1952), 139 Conn. 1, 89 Atl. (2d) 219, 31 A. L. R. (2d) 1206; *State v. Jarvis* (1928), 105 W. Va. 499, 143 S. E. 235; *Sorrells v. United States* (1932), 287 U. S. 435, 53 Sup. Ct. 210, 77 L. Ed. 413, 86 A. L. R. 249; 15 Am. Jur., Criminal Law, p. 24, sec. 335; 22 C. J. S., Criminal Law, p. 100, sec. 45 a.

There is a very clear distinction between inducing a person to do an unlawful act and setting a trap to catch him in the execution of a criminal design of his own conception. 15 Am. Jur., Criminal Law, p. 24, sec. 335; 22 C. J. S., Criminal Law, pp. 100, 101, sec. 45.

In certain crimes consent to the criminal act by the person complaining thereof eliminates an essential element, and hence constitutes a good defense. *Topolewski v. State* (1906), 130 Wis. 244, 109 N. W. 1037. Except for such cases the general rule is that if the criminal intent or the willing disposition to commit the crime originates in the mind of the accused and the criminal offense is completed, the fact that the opportunity is furnished or that the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him for it, constitutes no defense. However, if the evil intent and the criminal design originate in the mind of the government agent, and the accused is lured into the commission of the offense charged in order to prosecute him for it, when he would not have committed an offense of that character except for the urging of the agent, no conviction may be had. *State v. Marquardt* (Conn.), *supra*; 15 Am. Jur., Criminal Law, pp. 24, 25, sec. 335; 12 C. J. S., Criminal Law, p. 100, sec. 45 a.

In the case at bar the situation is comparable to that in *Piper v. State* (1930), 202 Wis. 58, 231 N. W. 162. There the defendant Piper, a barber, was prosecuted for practicing medicine without a license. An inspector for the board of medical examiners visited the defendant with a request for medical treatment for a claimed ailment, the feigned symptoms of which were explained by the inspector to the defendant. A bottle of medicine was sold by the defendant to the inspector. The defendant was arrested. He defended on the ground that the deceit of the inspector in inducing him to act rendered inadmissible in evidence the transaction between himself and the inspector. In disposing of such defense this court said (pp. 63, 64) :

" 'Merely setting a trap to catch a would-be criminal by affording him the freest opportunity to commit the offense' does not sacrifice any element of the offense. *Topolewski Case, supra,* p. 253. [*Topolewski v. State,* 130 Wis. 244,

109 N. W. 1037.] 'The fact that the party against whom a crime is contemplated suggests, aids, encourages, or abets the commission of the offense or sets a trap for the accused is not a defense where the accused has done every act essential to the completion of the offense.' The quotation is from the dissenting opinion of Mr. Justice BARNES in the *Koscak Case, supra,* p. 270 [*Koscak v. State,* 160 Wis. 255, 152 N. W. 181], but it is a correct statement of the rule, as the authorities there cited in support show, and is not at all in conflict with anything held or stated in the majority opinion. The inspector did nothing to relieve the defendant from any element of the offense. The situation is analogous to those involving illegal sales, ordering of obscene books by mail, and detecting fraudulent use of the mails. The conduct of the defendant, not the motive or deception of the inspector, is considered. 1 Bishop, Crim. Law (9th ed.) 686, 687."

We are in accord with the observation in 15 Am. Jur., Criminal Law, pp. 24, 25, sec. 335, that:

"To the argument that the act is done at the instigation or solicitation of an agent of the government, the courts have responded that the purpose of the detective is not to solicit the commission of the offense, but to ascertain if the defendant is engaged in an unlawful business. It is no defense that a person, acting as a decoy, furnished an opportunity for the commission of the offense. Such conduct is held not to procure the offense to be committed, the theory being that the offender acts of his own volition and is simply caught in his own devices."

Here, as in *Piper v. State, supra,* the officer offered an opportunity for the commission of the offense. Here, as there, the defendant committed each and every act essential to the offense charged. The defendant's statements to the officer on the occasion of the first visit to the effect that he sold the "hotter stuff" only to his better customers, and his encouragement to the officer to become a regular customer so that the defendant would get to know him better, coupled with the statement to the officer on a subsequent visit that

the officer arrived too late and that the stuff was sold to another customer, clearly demonstrated a willingness and an intention to commit the offense as charged. When the sale was consummated the offense was completed. In the light of this evidence the defendant's contention that the offense was the product of the police officer's creative activity cannot be sustained.

It is inconceivable that an individual free from taint of engaging in the unlawful traffic of selling obscene matter would declare against interest that he sold the "hotter stuff" only to his better customers and immediately thereafter suggest that the officer become a regular customer, indicating thereby that if he did, he would be served. It cannot be said that such demonstration denoted the attitude of an innocent person who was lured into the commission of the crime by the officer. Manifestly the defendant entertained the criminal intent before he was afforded the opportunity to violate the law.

The defendant argued upon this appeal that in *United States v. Becker* (2d Cir. 1933), 62 Fed. (2d) 1007, it was held that a government agent's conduct in inviting or inducing a defendant to commit a crime will withstand the defense of entrapment only when all of the following conditions exist: (1) That there has been an existing course of similar criminal conduct by the defendant, (2) the accused had already formed a design to commit the crime or similar crimes, and (3) there is a willingness by the accused to commit such crime as evinced by ready complaisance. The state submits that such principles are not rules but merely guides to aid in judicial determination. We agree with the position of the state in this regard. In *United States v. Becker, supra,* the court said (p. 1008):

[Referring to *Sorrells v. United States,* 287 U. S. 435, 77 L. Ed. 413, 53 S. Ct. 210.] "The majority thought that

although the officials may design and provoke the particular crime laid, this is not inevitably a defense. Their decision was that on the evidence before them the jury might have found that the accused was not habitually engaged in such crimes, and had shown no previous disposition to commit them. The precise limits were however left open as to what would excuse such instigation. The only excuses that courts have suggested so far as we can find, are these: An existing course of similar criminal conduct; the accused's already formed design to commit the crime or similar crimes; his willingness to do so, as evinced by ready complaisance. The decisions are plentiful, but the judges generally content themselves with deciding the case upon the evidence before them; we have been unable to extract from them any definite doctrine, and it seems unprofitable once more merely to catalogue the citations."

It is to be noted that in *Piper v. State, supra,* the record was barren of evidence of previous conviction of the defendant or similar conduct on his part in the past. However, in the case at bar the justifying elements referred to in *United States v. Becker, supra,* existed. It is plain that the defendant's statement of selling the "hotter stuff" to his best customers indicated that the sale to the police officer was not an isolated transaction, but that the defendant had engaged in such activity in the past. It revealed too the defendant's predisposition,—his already formed design,—to commit the offense or similar offenses conditioned by safeguards against detection.

The other statements to the officer that he does not keep the "hot stuff" in the store,—that he sold it to another customer and that the officer would have to wait,—also established the existence of prior violations and the design and willingness to commit the crime again. Manifestly, the police officer did not procure the defendant to commit the offense but merely set a trap to catch him in the execution of the criminal designs of his own conception. It cannot be

held that the criminal design originated with the police officer, nor that he implanted in the mind of the defendant as an innocent person the disposition to commit the offense and induce its commission in order that the officer might prosecute him. We conclude that the defendant was not "entrapped" into the crime. In view of the record, the books and playing cards were admissible in evidence. There was sufficient credible evidence to authorize the finding of guilt beyond a reasonable doubt.

The issue of entrapment was raised by the defendant on a motion to suppress evidence in the possession of the state on the basis that the same was illegally obtained from the defendant. While it appears that there was no prejudice to either the defendant or the state by the use of such method of procedure in the instant cause,—the same court having heard and determined the motion and having presided at the trial without a jury,—nevertheless the method employed was not consonant with procedure recognized generally and in this state.

Entrapment is an affirmative defense bearing upon the guilt or innocence of the defendant. It is a question for the jury to determine. In *State ex rel. Kowaleski v. Kubiak* (1950), 256 Wis. 518, 520, 41 N. W. (2d) 605, it was said:

". . . unlawful entrapment is a matter of defense and evidence thereof is admissible upon a trial."

22 C. J. S., Criminal Law, pp. 99, 100, sec. 45 a, states:

" 'Entrapment' is recognized as a valid defense available to a person charged with the commission of a public offense under certain circumstances. It is a positive defense, the invocation of which necessarily assumes that the act charged was committed."

In *Sorrells v. United States, supra,* the court held that entrapment is a defense which is raised under a plea of not guilty, and that it is not raised by means of a plea in bar.

Sec. 955.09, Stats., provides in part:

"PLEAS AND MOTIONS BEFORE TRIAL; . . . (1) All pleas in abatement or in bar, demurrers, and motions to quash are abolished, and defenses and objections which may or must be raised before trial shall hereafter be raised only by motion to dismiss or for appropriate relief as herein provided.

"(2) Any defense or objection which is capable of determination without the trial of the general issue may be raised before trial by motion.

"(3) Defenses and objections based on defects in the institution of the proceedings, insufficiency of the information or indictment, invalidity in whole or in part of the statute on which the prosecution is founded, or the use of illegal means to secure evidence (except confessions) must be raised before trial by motion or be deemed waived. . . ."

The defense of entrapment is to be determined upon the trial,—it pertains to the merits of the cause,—it is not to be raised in a preliminary or collateral manner,—it affects the substance of the charge and is not a ground for excluding evidence. Evidence illegally obtained will be suppressed or excluded in a criminal case only upon a showing that it was obtained in violation of a constitutional right. As said in *Ware v. State* (1930), 201 Wis. 425, 427, 230 N. W. 80:

"The fact that such a writing is procured wrongfully and without the consent of the defendant does not render it inadmissible in evidence. 'The common-law rule is that the admissibility of evidence is not affected by the illegality of the means by which it was obtained. . . . Nor can we . . . subscribe to the suggestion that the courts have a discretion to exclude evidence, the admission of which is not unconstitutional, because unethically secured. This would be at variance with the common-law doctrine generally supported by authority. There is no case that sustains, nor any recognized textbook that gives color to, such a view.' *Olmstead v. U. S.* 277 U. S. 438, 467, 468, 48 Sup. Ct. 564, 569, 72 Lawy. Ed. 944, 951, 952.

"Mr. Wigmore in his scholarly work on evidence has, by the citation of a large number of decided cases, established the rule 'that the admissibility of evidence is not affected by the illegality of the means through which the party has been enabled to obtain the evidence.' 4 Wigmore, Evidence (2d ed.) sec. 2183. His analysis of the cases in the federal supreme court demonstrates that the doctrine of the exclusion of evidence illegally obtained should be confined strictly to those cases where the procuring of the evidence has violated some constitutional right of the defendant."

With respect to the defense of entrapment, the court is not called upon to deal with constitutional considerations as it is in the case of the validity of a search warrant or of a search made without a warrant. A challenge to an unlawful search is a collateral matter. The defense of entrapment is not in such category. As indicated in *State v. Warfield* (1924), 184 Wis. 56, 62, 198 N. W. 854, the purpose of requiring motions to suppress evidence obtained as a result of unlawful search to be made before trial is "to avoid the necessity of entering upon a collateral inquiry during the course of the trial." Manifestly a requirement that the defense of entrapment be raised and determined before trial would in effect require two trials since much that the state is obliged to establish at the trial would also have to be proven in the hearing of the motion.

Since entrapment is not to be raised by a plea in bar nor by a motion to suppress, it is not a matter that falls within the provision of sec. 955.09, Stats., and hence is not to be raised by motion before trial.

In the case at bar the error of the court in entertaining the motion was not prejudicial and we are obliged to sustain the disposition as made.

*By the Court.*—Order and judgment affirmed.