HAWTHORNE, Plaintiff in error, v. STATE, Defendant in error.

*No. State 96. Argued May 9, 1969.—Decided June 3, 1969.*
(Also reported in 168 N. W. 2d 85.)

84

The cause was submitted for the appellant on the brief of *Alan D. Eisenberg* and *Eisenberg, Kletzke & Eisenberg,* all of Milwaukee, and for the respondent on the

brief of *Robert W. Warren,* attorney general, *E. Michael McCann,* district attorney of Milwaukee county, and *Allen L. Samson,* deputy district attorney.

HANLEY, J. On this appeal the defendant does not dispute the violation of sec. 161.275 (1), Stats., but contends that the defense of entrapment bars his conviction. The defendant urges upon the court a different construction of the entrapment defense, a different evidentiary standard, and a different procedural manner of raising the issue of entrapment. More specifically, the defendant raises the following arguments:

(1) Is the Wisconsin "essential element" test a proper construction of entrapment;

(2) Does the state have the burden of proving no entrapment beyond a reasonable doubt after the defendant presents a prima facie case of entrapment;

(3) Should a defense of entrapment be heard prior to a trial on the merits; and

(4) Does a determination of entrapment as a part of the trial on the merits violate the due process requirements of the state or federal constitution?

### 1. "Essential Element" Test.

Entrapment was first recognized as a defense in Wisconsin in *Topolewski v. State* (1906), 130 Wis. 244, 109 N. W. 1037. The case involved a larceny of a barrel of meat. While the police were not involved in the "trap" which was set in that case, the defendant contended that the property owner's agent had participated in the crime to such an extent that the owner's consent to the taking had to be implied. If the owner consented to the "taking," there could be no larceny. The issue in that case was framed as follows:

". . . If a person procures another to arrange with a third person for the latter to consummate, as he sup-

poses, larceny of the goods of such person and such third person in the course of negotiations so sanctioned by such person suggests the plan to be followed, which is agreed upon between the two, each to be an actor in the matter, and subsequently that is sanctioned secretly by such person, the purpose on the part of the latter being to entrap and bring to justice one thought to be disposed to commit the offense of larceny, and such person carries out a part of such plan necessary to its consummation assigned to such other in the agreement aforesaid, such third person not knowing that such person is advised of the impending offense, and at the finality causes one of its employees to, tacitly at least, consent to the taking of the goods, not knowing of the real nature of the transaction, is such third person guilty of the crime of larceny, *or does the conduct of such person take from the transaction the element of trespass or nonconsent essential to such crime?" Topolewski v. State, supra,* at page 250. (Emphasis supplied.)

After posing the issue in the case above, the court reviewed the evidence and came to the conclusion that:

". . . where the owner of property by himself or his agent, actually or constructively, aids in the commission of the offense, as intended by the wrongdoer, by performing or rendering unnecessary some act in the transaction essential to the offense, the would-be criminal is not guilty of all the elements of the offense. . . ." *Topolewski v. State, supra,* at page 254.

Simply stated, the court found that there could be no larceny without a trespass. There was no trespass because the owner had consented to the taking. Undeniably, this was the beginning of the "essential element" test in Wisconsin.

The defendant argues that in decisions subsequent to the *Topolewski Case,* the court ignored the incidents of inducement or solicitation and limited the defense of entrapment to those situations wherein the police or others committed one of the elements of the crime the defendant was charged with. With a narrow reading of the case, this may be a fair criticism of *Piper v. State*

(1930), 202 Wis. 58, 231 N. W. 2d 162, wherein the court stated at page 64:

". . . The inspector did nothing to relieve the defendant from any element of the offense. . . ."

However, the criticism is not warranted in other cases where the court discusses entrapment.

In *Koscak v. State* (1915), 160 Wis. 255, 152 N. W. 181, the court reversed the conviction of a defendant who raised the issue of entrapment because the jury was not informed:

". . . that if the detectives prompted, urged, or originated the perpetration of these offenses, or that they intimidated the defendant and thereby became the active parties to instigate and perpetrate the offense charged, . . . then he [the defendant] was not guilty. . . ." *Koscak v. State, supra,* at page 268.

In *State ex rel. Kowaleski v. Kubiak* (1950), 256 Wis. 518, 520, 41 N. W. 2d 605, the court pointed out that entrapment was not a defense

". . . where it is found that the intent to commit a crime originates in the mind of a defendant and he has done every act essential to the completion of the offense. . . ."

Not only must every element of the crime be performed by the defendant, the intent to commit the crime must originate in the mind of the defendant. This factor directly relates to the matter of inducement and solicitation.

*State v. Hochman* (1957), 2 Wis. 2d 410, 86 N. W. 2d 446, is the last time the court thoroughly analyzed the defense of entrapment.[1] At that time the court clearly was concerned with the problem of inducement and solicitation.

---

[1] Entrapment is also briefly discussed in *State v. Rice* (1967), 37 Wis. 2d 392, 155 N. W. 2d 116, but the court felt that it was not pertinent to the facts of that case.

"In certain crimes consent to the criminal act by the person complaining thereof eliminates an essential element, and hence constitutes a good defense. [citing the *Topolewski Case*] . . . Except for such cases the general rule is that if the criminal intent or the willing disposition to commit the crime originates in the mind of the accused and the criminal offense is completed, the fact that the opportunity is furnished or that the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him for it, constitutes no defense. However, if the evil intent and the criminal design originate in the mind of the government agent, and the accused is lured into the commission of the offense charged in order to prosecute him for it, when he would not have committed an offense of that character except for the urging of the agent, no conviction may be had. . . ." *State v. Hochman, supra,* at page 414.

The defendant's contention notwithstanding, the court has clearly been concerned with the culpability of the defendant. Moreover, the Wisconsin position is clearly identical to the position taken by other courts throughout the country.

". . . Generally, . . . where the criminal intent originates in the mind of the entrapping person and the accused is lured into the commission of the offense charged in order to prosecute him, no conviction may be had. But where the criminal intent originates in the mind of the accused and the criminal offense is completed, the fact that a person acting as a decoy for the state or public officials furnished the accused an opportunity for commission of the offense, or that the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him, constitutes no defense. . . ." 21 Am. Jur. 2d, *Criminal Law,* p. 213, sec. 144.

". . . entrapment as a matter of law is not established where there is any substantial evidence from which it may be inferred that the criminal intent to commit a particular offense originated in the mind of accused." 22 C. J. S., *Criminal Law,* p. 141, sec. 45 (2).

If it is the defendant's contention that inducement and solicitation were accomplished when the officer let it be known that he was seeking to buy marijuana, the contention has no merit and must be rejected.

Officer Marshall's testimony clearly shows that the defendant offered to sell marijuana to him. The trial judge obviously believed the officer. The defendant never testified. Under either the "essential element" test or the "inducement" test, the police conduct involved in this case did not constitute entrapment.

## 2. The Evidentiary Burden When Entrapment Is Raised.

The defendant contends that once he has established a prima facie case of entrapment, the burden should be on the state to prove, beyond a reasonable doubt, that entrapment did not occur.

This contention could be quite easily disposed of by pointing out that the defendant never established any inducement or solicitation. The uncontradicted testimony of the officer was that the defendant offered to obtain marijuana immediately after the officer stated that he was looking for "Slim" who was going to obtain marijuana. The officer's statement that he was trying to obtain marijuana could hardly amount to a solicitation of the defendant.

The court will take the opportunity presented by this case to clarify its position on entrapment. The cases in this jurisdiction and elsewhere establish that there are two somewhat related but quite clearly distinctive tests for entrapment. Basically, the distinction involves the burden and manner of proof. Although the federal cases are not binding on this court, they provide a perfect illustration of the two different tests. For purposes of convenience, the first test will be referred to as the

"origin of intent" test, while the second will be referred to as the "objective" test.[2]

The "origin of intent" test was most clearly defined in *United States v. Sherman* (2d Cir. 1952), 200 Fed. 2d 880, 882, 883:

"Therefore in such cases [where entrapment is raised as an issue] two questions of fact arise: (1) did the agent induce the accused to commit the offence charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offence. On the first question the accused has the burden; on the second the prosecution has it. . . ."

The opinion does not state the evidentiary standard of the burden, but we are satisfied that the burden of the accused is to show by a preponderance of the evidence that the inducement occurred. The burden of the state would be to show beyond a reasonable doubt that the accused had a prior disposition to commit the crime.

The majority of the United States Supreme Court has clearly adopted the "origin of intent" test.

". . . the defense of entrapment is not simply that the particular act was committed at the instance of government officials . . . The predisposition and criminal design of the defendant are relevant. But the issues raised and the evidence adduced must be pertinent to the controlling question whether the defendant is a person otherwise innocent whom the Government is seeking to punish for an alleged offense which is the product of the creative activity of its own officials. If that is the fact, common justice requires that the accused be permitted to prove it. The Government in such a case is in no position to object to evidence of the activities of its representatives in relation to the accused, and if the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing

---

[2] The names of these tests were borrowed from Note, *Entrapment*, 73 Harv. L. Rev. 1333, 1335.

upon that issue. If in consequence he suffers a disadvantage, he has brought it upon himself by reason of the nature of the defense." *Sorrells v. United States* (1932), 287 U. S. 435, 451, 452, 53 Sup. Ct. 210, 77 L. Ed. 413.

The procedure outlined in the *Sorrells Case* was specifically approved in the majority opinion of *Sherman v. United States* (1958), 356 U. S. 369, 372, 78 Sup. Ct. 819, 2 L. Ed. 2d 848.

The "objective" test considers only the police conduct involved and makes no reference to the predisposition of the particular defendant. Again, however, the burden of proof would seem to be on the defendant to show by a preponderance of the evidence that he had been induced or solicited. Particularly, where the "objective" test is used, inducement means something more than a request or an offer.[3]

The "objective" test has received its greatest impetus from two concurring opinions of the United States Supreme Court. In *Sorrells v. United States, supra,* Justices ROBERTS, BRANDEIS, and STONE were of the opinion that the "origin of intent" test was improper.

"Whatever may be the demerits of the defendant or his previous infractions of law these will not justify the instigation and creation of a new crime, as a means to reach him and punish him for his past misdemeanors. He has committed the crime in question, but, by supposition, only because of instigation and inducement by a government officer. To say that such conduct by an official of government is condoned and rendered innocuous by the fact that the defendant had a bad reputation or had previously transgressed is wholly to disregard the reason for refusing the processes of the court to consummate an abhorrent transaction. . . ." *Sorrells v. United States, supra,* at pages 458 and 459.

---

[3] *See* Note, *Entrapment,* 73 Harv. L. Rev. 1333, 1336, and cases cited therein.

Likewise, in the concurring opinion of Justice FRANK-FURTER (and three others) to *Sherman v. United States, supra,* the "origin of intent" test was again taken to task.

". . . a test that looks to the character and predisposition of the defendant rather than the conduct of the police loses sight of the underlying reason for the defense of entrapment. No matter what the defendant's past record and present inclinations to criminality, or the depths to which he has sunk in the estimation of society, certain police conduct to ensnare him into further crime is not to be tolerated by an advanced society. . . ." *Sherman v. United States* (1958), 356 U. S. 369, 382, 383, 78 Sup. Ct. 819, 2 L. Ed. 2d 848.

If there was any question as to which test Wisconsin was following, it was certainly resolved in *State v. Hochman, supra,* at page 417.

". . . It is plain that the defendant's statement of selling the 'hotter stuff' to his best customers indicated that the sale to the police officer was not an isolated transaction, but that the defendant had engaged in such activity in the past. It revealed too the defendant's predisposition,—his already formed design,—to commit the offense or similar offenses conditioned by safeguards against detection."

Clearly, Wisconsin follows the "origin of intent" test. We give our approval in this case.

Next, we must determine the evidentiary standard which the accused must meet in establishing the inducement or solicitation on the part of the police. We hold that the defendant has the burden of convincing the trier of facts by a preponderance of the evidence that he was induced to perform the crime by the solicitation of the police officer. We reject the defendant's contention that the state has the burden of proof after he has established a prima facie case of entrapment. The evidence in this case does not show any inducement.

### 3. Should Entrapment Be Decided Prior to Trial?

The defendant contends that there is an inconsistency between his plea of not guilty and his plea of not guilty by reason of entrapment. Therefore he contends he should be permitted to raise the defense of entrapment prior to a trial on the merits. That there is some inconsistency between the pleas cannot be denied.

"Entrapment is a positive defense, the invocation of which necessarily assumes that the act charged was committed." 22 C. J. S., *Criminal Law*, p. 137, sec. 45 (1).

Whether this inconsistency justifies a bifurcated trial similar to the procedure used in determining sanity is another question. No cases have been cited by the defendant, and none have been found, wherein entrapment was considered prior to a trial on the merits. On the other hand

". . . It is the general rule in this and most jurisdictions that the defense of entrapment is not available to a defendant who denies that he committed the offense charged [citing 61 A. L. R. 2d 677]." *Reed v. Texas* (Tex. Crim. App. 1967), 421 S. W. 2d 116, 117.

It does not seem logical to force the defendant to admit guilt in order to raise the issue of entrapment.

". . . A defendant, for example, may deny that he committed every element of the crime charged, yet properly allege that such acts as he did commit were induced by law enforcement officers. . . . Moreover, a defendant may properly contend that the evidence shows unlawful police conduct amounting to entrapment without conceding that it also shows his guilt beyond a reasonable doubt. . . ." *People v. Perez* (1965), 62 Cal. 2d 769, 775, 401 Pac. 2d 934.

In this case the defendant was permitted to plead a general denial and to raise the issue of entrapment. He had no right to a separate trial on the inconsistent defenses. This court has specifically stated:

"The defense of entrapment is to be determined upon the trial,—it pertains to the merits of the cause,—it is not to be raised in a preliminary or collateral manner,—it affects the substance of the charge and is not a ground for excluding evidence. . . ." *State v. Hochman, supra,* at page 419.

The defendant's contention that entrapment should have been determined prior to trial is rejected.

### 4. Violation of Due Process.

The defendant argues that a plea of entrapment is a challenge to the jurisdiction of the court and that a failure to determine the issue of entrapment prior to a trial on the merits amounts to a trial without jurisdiction which is a violation of both the federal and Wisconsin Constitutions. No authority has been cited in support of this proposition.

Wisconsin is in accord with both the federal and state decisions in holding that entrapment is a defense on the merits to a criminal charge. The defense does not challenge the jurisdiction of the court.

We conclude that the defendant's arguments have no merit and the judgment for conviction must be affirmed.

*By the Court.*—Judgment affirmed.