STATE of Wisconsin, Plaintiff-Respondent,

v.

Wade A. SATERNUS, Defendant-Appellant-Petitioner.

Supreme Court

*No. 84–768–CR. Argued October 1, 1985.—Decided February 4, 1986.*

(Also reported in 381 N.W.2d 290.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Donna L. Hintze,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Christopher G. Wren,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, CHIEF JUSTICE. This is a review of a decision of the court of appeals[1] which affirmed a judgment and order of the circuit court for Langlade county, James P. Jansen, circuit judge. The question presented is whether the entrapment instruction (Wis JI—Criminal 780) improperly placed the burden of persuasion upon the defendant to prove that he was induced to commit the crime. We conclude that the instruction was correct. We affirm the court of appeals decision.

The substantive crime of which Saternus was convicted was the delivery of a controlled substance, tetrahydrocannabinols, in violation of sec. 161.41 (1) (b) and sec. 161.14 (4) (t), Stats. Saternus, after a verdict of guilty, was sentenced to a twenty-four-month term of imprisonment. Judgment of conviction was entered on September 12, 1983. A motion for a new trial was denied on April 9, 1984.

Only the common-law defense of entrapment was asserted at trial. Saternus took the stand at trial and admitted the delivery of approximately one ounce of marijuana (tetrahydrocannabinols) to an undercover agent. It was his claim that the undercover agent induced him to sell the marijuana when he had no prior intention to sell and would not have sold it but for the conduct of the state's agent.

The pattern jury instruction on entrapment was given to the jury. While the record is not explicit on the origin of the request for the instruction, it is implicit in the record and arguments of counsel that the defendant not only did not object to the instruction, but asked for

---

[1] *State v. Saternus,* 122 Wis. 2d 439, 361 N.W.2d 728 (Ct. App. 1984).

the instruction in the form given. On appeal to the court of appeals and on this review, it is this instruction, Wis JI—Criminal 780,[2] that is challenged. Wis J I—Criminal

[2] "WIS J I—CRIMINAL 780

"(Supplement Service)

"780 ENTRAPMENT

"The defense of entrapment is an issue in this case.

"In law the term "entrapment" refers to a defense available to a defendant whenever a law enforcement officer has used improper methods to induce him to commit an offense, and by the use of such methods has succeeded in inducing him to commit an offense which he was not otherwise disposed to commit.

"The burden of proving that a law enforcement officer induced him to commit the offense is upon the defendant, by a preponderance of the evidence. By preponderance of the evidence is meant the evidence which possessed the greater weight or convincing power. It is not sufficient if the evidence of inducement is of slightly greater weight or convincing power; it must go further and satisfy or convince you before the burden is met.

"The law recognizes that, in the enforcement of the law, it is often necessary for law enforcement officers to set traps to catch criminals by affording them the freest opportunity to commit offenses which they are disposed to commit. Some inducement, encouragement, or solicitation by law enforcement officers is, therefore, permissible. But it is not proper for them to use excessive incitement, urging, persuasion, or temptation which is likely to induce the commission of an offense by a person not already disposed to commit an offense of that kind. It is the duty of law enforcement officers to detect criminals but not to create them.

"Therefore, if the law enforcement officer, for the purpose of obtaining evidence on which to prosecute the defendant, used excessive incitement, urging, persuasion, or temptation, and, thus, created more than the usual or ordinary opportunity to commit the offense, and, prior to the inducement, the defendant was not already disposed and ready and willing to commit such an offense, the defense of entrapment is established, and you should find the defendant not guilty.

"On the other hand, if the law enforcement officer created only the usual or ordinary opportunity to commit the offense, or, if the defendant, prior to the inducement, was already disposed and ready and will-

780 was tailored by the judge to conform to the circumstances of the case. No objection is made to the modification. It is the basic instruction that is questioned.

Although the state on this review continues to assert that the right to object to the instruction was waived, this court nevertheless has concluded that review is appropriate, because the correctness of the jury instruction now in use by trial courts is a matter for our concern in the administration of courts and is within this court's "superintending and administrative authority over all courts." Wis. Const. art. VII, sec. 3. The public defender asserts

ing to commit such an offense, the defense of entrapment is not established, and the defendant should not be acquitted on that ground.

"The burden of proving that prior to the inducement the defendant was already disposed and ready and willing to commit the offense is upon the state, which must prove such prior disposition beyond a reasonable doubt before the defense of entrapment is overcome. If you are not satisfied beyond a reasonable doubt that the defendant had a prior disposition to commit the offense, then you must find that the defense by entrapment is not overcome.

"In determining whether the defendant had a prior disposition to commit an offense, you may consider whether he readily complied with the inducements of the law enforcement officer, keeping in mind whether any reluctance he exhibited was due to a fear of detection. You may, also, consider whether or not the defendant has committed such offenses in the past.

"[The following paragraph should be given when gambling, illegal sale or prostitution is involved:

"A mere offer to buy does not create more than the usual opportunity to commit an offense. For example, when the police desire to obtain evidence against a person who they have some reason to believe is (selling narcotics) (selling obscene literature) (selling liquor after hours) (engaged in prostitution), it is not improper for the police to pretend to be somebody else and to offer, either directly or through an informer or other decoy, (to purchase the goods which are being sold illegally) (to have intercourse for money). In such a situation, the police are creating only the usual opportunity to commit this kind of an offense.]

"If you are satisfied from the evidence in this case, under the instructions I have given you, that the defendant was entrapped into committing the crime charged, you must find him not guilty."

that the instructions as given improperly placed a burden of persuasion on the defendant and that this improperly allocated burden constituted plain error and, hence, is cognizable by this court whether or not objection was made.[3]

The record reveals that the Langlade county sheriff's department was engaged in an investigation of drug sales. On December 3, 1982, the activities of the investigators focused on Rascal's Bar in Antigo. A trained undercover officer from Marathon county assisted the Langlade authorities. He was accompanied by a woman informant, Jane Husnick, who was on probation for a drug violation in Langlade county. It was the conduct of Husnick acting as an undercover agent that the defendant asserts constituted the inducement for him to commit the crime when he was not predisposed to do so. The record shows that Husnick had volunteered "to turn informant and would give names and probably set up some purchases."

At trial it was revealed that, in exchange for her informant activities, Husnick was given spending money. Also, a charge of drunk driving was reduced to a lesser charge and the forfeiture imposed was paid by the sheriff's department.

Deputy Kujawa, from Marathon county, as the undercover agent, worked with Jane Husnick on the night in question at Rascal's Bar in Antigo. Wade Saternus was not the intended target of the investigation. The target suspect was not at the bar that night. Husnick introduced Saternus to Kujawa, telling Saternus that Kujawa was her fiance.

When Husnick was called as a witness by the defendant, she stated that she had known Saternus since their freshman year at the Antigo High School. She said that she helped the investigation because she was concerned with the problems that drug use caused, but she also said:

---

[3] *Virgil v. State,* 84 Wis. 2d 166, 267 N.W. 2d 852 (1978).

465

"[T]here was a statement made at one time and that would be—I'm on probation and that if things worked out the way they were supposed to and if as many people as fifteen, some of my restitution would be paid."

Husnick also testified that, at an earlier time, she had called Saternus asking if he had pot to sell. She said he answered, "No." Saternus' counsel asked her, "[On the night of the sale at Rascal's Bar] did you tell him you were just in Rhinelander to see some relative that was sick?" She responded, "I could have said that."

When Saternus was called as a witness, he admitted that he sold a small packet of marijuana to Jane and her fiance. He said that, when Jane first asked him at Rascal's Bar if he knew where she could get some pot, he said, "No." He stated that Jane later that evening came up to him and said:

"We just got back from Rhinelander Hospital, Wade. Tom's aunt's got cancer and we went to spend the last few hours with her. We really need some pot."

Saternus testified that he told Husnick he had "some of my own that I could sell but I'd have to get what I paid for it." He stated that he sold the pot only because Jane was a friend and "They were going to lose a family member and they seemed sad."

Saternus testified that, on the night of the sale at Rascal's Bar, Jane was "pestering the heck out of me . . . [h]anging all over me, arms around me, trying to kiss me and stuff, you know," but that he only "bit" after she gave him the Rhinelander Hospital story.

He testified that he had never sold marijuana before and that, later when Jane called him at home asking to buy more, he said that he did not have any more and did

not want to be bothered again.[4] Thus, the defendant asserts, he was entrapped because he was "induced" by Husnick to commit a crime when he was not predisposed to do so.

The jury returned a verdict of guilty. The court of appeals affirmed.

On this review the defendant focuses his attack upon the pattern entrapment instruction Wis JI—780.[5] The principal claim is that the instruction impermissibly, under state law, places a burden of persuasion on the defendant to show that he was induced to commit the crime. Other subsidiary arguments are also put forward. We conclude that none of them warrants a reversal of the court of appeals decision.

A brief survey of the Wisconsin case law of entrapment places the problems posed on this review in perspective. *Topolewski v. State,* 130 Wis. 244, 109 N.W. 1037 (1906), has sometimes been referred to by this court as Wisconsin's first recognition of entrapment as a common-law defense. *See, Hawthorne v. State,* 43 Wis. 2d 82, 86, 168 N.W. 2d 85 (1969). However, as the earlier case of *State v. Hochman,* 2 Wis. 2d 410, 86 N.W. 2d 446 (1957), recognized, *Topolewski* was a "no crime" case, because the entry into the premises had been with the consent of the owner; hence, an essential element of burglary, entry without consent, was absent. Thus, *Topolewski* was not an entrapment case in the sense presently understood, where all elements of the crime have been proved but for policy reasons the defendant is to be exonerated.

---

[4] A conference in chambers in respect to whether the court would permit the district attorney to ask Saternus whether he had ever been convicted of a crime revealed that none of his prior convictions (three misdemeanors) were drug related.

[5] *See generally,* for excellent discussion of the entrapment defense, LaFave & Israel, *Criminal Procedure,* ch. 5, p. 412 ff. (1984), and *Entrapment,* Model Penal Code and Commentaries, Part 1, art. 2, sec. 2.13, p. 405 ff. (1985).

*State ex rel. Kowaleski v. Kubiak,* 256 Wis. 518, 520, 41 N.W. 2d 605 (1950), makes clear that entrapment cannot be a dispositive issue unless all elements of the crime are proved, *i.e.,* "defendant . . . has done every act essential to the completion of the offense." *See, Piper v. State,* 202 Wis. 58, 231 N.W. 162 (1930).

The judge's instructions to the jury in the instant case correctly reflected this rule when he stated, *prior* to giving the jury the instruction particularly pertinent to entrapment:

> "If you are satisfied beyond a reasonable doubt that the defendant delivered THC and that the defendant knew that the substance he delivered was THC, a controlled substance, then you should find the defendant guilty. If, however, you are not so satisfied, then you should find the defendant not guilty."

■
Thus, it is important to note that Wis JI—780 is triggered only when the jury has first concluded the elements of the crime have been proved beyond a reasonable doubt—that there is a completed crime. If the jury concludes that the elements of the crime have not been proved beyond a reasonable doubt, the entrapment defense never becomes relevant and the jury should return a not guilty verdict because of insufficiency of proof of the elements of the crime. Entrapment is an affirmative defense which, for public policy considerations, comes into play to exonerate an accused only in circumstances where the accused would otherwise be found guilty because all elements of the crime have been proved beyond a reasonable doubt. The order of giving the instructions to the jury reflects the suggestion of the criminal law instructions committee that the elements of the crime be placed before the jury for consideration prior to their consideration of any asserted defenses. (*See* Wis JI—Criminal SM-5)

A series of cases of this court define the entrapment defense in Wisconsin and discuss its components. *Kubiak, supra,* 256 Wis. at 520, refers to *Piper, supra,* for a statement of the proposition that entrapment is not available to a defendant where the "intent to commit a crime originates in the mind of a defendant." *State v. Hochman, supra,* 2 Wis. 2d at 414, additionally explained this court's view of the entrapment defense when it stated:

> "[T]he general rule is that if the criminal intent or the willing disposition to commit the crime originates in the mind of the accused and the criminal offense is completed, the fact that the opportunity is furnished or that the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him for it, constitutes no defense. However, if the evil intent and the criminal design originate in the mind of the government agent, and the accused is lured into the commission of the offense charged in order to prosecute him for it, when he would not have committed an offense of that character except for the urging of the agent, no conviction may be had."[6]

The "origin of intent" doctrine, *i.e.,* a focus on the reason for, or the genesis of, the defendant's state of mind leading to the intent to commit the crime came to full expression in *Hawthorne v. State,* 43 Wis. 2d 82, 168 N.W. 2d 85 (1969). *Hawthorne* summarizes this court's concept of the entrapment defense. It reiterated the defense was applicable only to those cases where all elements of the crime had been proved, including the intent to commit the crime. Additionally, *Hawthorne* made explicit what was implicit in previous cases—that, under this court's

---

[6] *Hochman,* at 418, quotes with approval 22 C.J.S.'s statement, "It is a positive defense, the invocation of which necessarily assumes that the act charged was committed."

formulation of the defense, "the court has clearly been concerned with the culpability of the defendant." P. 89.

Thus, under the rationale of *Hawthorne,* "entrapment" is not a defense which is to be resolved solely by consideration of the outrageousness of the government agent's conduct. Rather, although the conduct of the agent in inducing a defendant to commit a crime be reprehensible, the defendant will be found guilty if " 'the criminal intent originates in the mind of the accused and the criminal offense is completed.' " *Hawthorne* at 89.

Accordingly, this court has adopted the "subjective" test—whether the police conduct affected or changed the particular defendant's state of mind—as contrasted with the "objective" test, which focuses not on the state of mind of the particular defendant but, rather, upon the question of how the reprehensible police conduct in inducing the crime would affect the intent of a person in the circumstances whether predisposed or not.

This court has thus far eschewed emphasizing one policy rationale for the entrapment rule—that mere outrageousness of governmental conduct alone suffices to let the accused, predisposed or not, to go free. In *Hawthorne,* at 93, specifically repudiating the rationale of the dissenters in *Sorrells v. United States,* 287 U.S. 435 (1932), and of the concurring justices in *Sherman v. United States,* 356 U.S. 369 (1958), this court chose to follow the subjective approach of the majority position of those two Supreme Court decisions. Thus, while police conduct of "inducement" is a triggering factor, it is not controlling on whether or not the defendant was "entrapped." In Wisconsin, the question is "whether the defendant is a person otherwise innocent." *Hawthorne,* at 91.

That approach is significant to the allocation and quantum of the burden of proof—the burden of persuasion. Under the subjective test, the focus is on the particu-

470

lar defendant's state of mind as affected by the police conduct in the particular case.

We start out with the proposition that the defendant, at the time of its commission, intended to commit the crime. Thus, the defense of entrapment is designed to exonerate a person who under ordinary circumstances is "guilty." This cannot or should not be a defense that is entertained lightly by courts. Thus, to even get the defense before the jury, it behooves a defendant to make a substantial showing of inducement by the government to have the defendant commit the crime. A defense which in essence asserts, "I committed the crime and at the time I did so that was my intention, but you should let me off because the police violated public policy" is hardly one that is viewed with great approval. The defense of entrapment as viewed by the Wisconsin court is a disfavored one, because the accused is asking to be relieved of the consequences of his guilt. *See*, Model Penal Code, art. 2, sec. 2.13, p. 415 (1985). Under the philosophy of *Hawthorne*, entrapment is a disfavored defense, for to place emphasis on the police conduct alone, rather than on the origin of the intent, would make it more likely that a guilty person would go free. A burden of persuasion, rather than a burden of mere production, placed upon the accused to show inducement dissuades a jury from moving on to the second phase, predisposition, absent a substantial proof of government misconduct.

This treatment is reflected in the *Hawthorne* language:

> "[W]e are satisfied that the burden of the accused
> is to show by a preponderance of the evidence that the
> inducement occurred." P. 91.

471

If there were any doubt whether this is indeed a burden of persuasion and not a mere burden of production[7] of some evidence of inducement, the language of *Hawthorne,* at 93, resolves that doubt:

> "We hold that the defendant has the burden of convincing the trier of facts by a preponderance of the evidence that he was induced to perform the crime by the solicitation of the police officer."

Clearly, as a threshold step in mounting the entrapment defense, the defendant must present evidence which, if believed, will meet the burden of persuasion, sufficient to convince the trier of the facts that he was induced to commit the crime.

The instruction given in this case stated:

> "The burden of proving that a law enforcement officer induced him to commit the offense is upon the defendant by a preponderance of the evidence. By a preponderance of the evidence is meant evidence which possesses the greater weight or convincing power. It is not sufficient if the evidence of inducement is of slightly greater weight or convincing power. It must go further and satisfy or convince you before the burden is met."

This instruction fully comports with the language of *Hawthorne;* and, in its placing a burden on the defendant beyond that of mere production of evidence, furthers the general philosophy of *Hawthorne,* which makes more difficult the assertion of a defense where there has been proof beyond a reasonable doubt of all essential elements that show guilt.[8]

---

[7] McCormick, *Evidence* (3d ed.), Affirmative Defenses and Presumptions in Criminal Cases, sec. 346, p. 987 ff. (1984).

[8] It must be reemphasized that the defendant's intent has been proved beyond a reasonable doubt. Under the *Hawthorne* rationale, there should be no reason to inquire as to the origin of that intent unless there is substantial and convincing evidence of police inducement.

472

Nevertheless, the instruction is questioned by the defendant on two bases:

One, that the instruction used does not accurately reflect the *Hawthorne* formulation and, in any event, the formulation of *Hawthorne* is "inartful." As we have demonstrated, the *Hawthorne* allocation of burden is carefully explicated in the opinion itself and comports with the general concept of this court's appraisal of the entrapment defense. The instructions given comply with the express standards of *Hawthorne.*

Two, defendant also faults the *Hawthorne* standard because it is asserted the burden stated therein is similar to the middle burden of proof of persuasion and is not consistent with the lowest burden of persuasion. Whether this assertion is correct is irrelevant. What is relevant is whether the burden stated in the instructions complies with the standard set by this court in *Hawthorne.* It does. It should be noted, however, that an instruction differing in no relevant way from the one used here was determined to state the ordinary or lowest burden standard. *See, Kirkpatrick v. State (DNR),* 53 Wis. 2d 522, 192 N.W. 2d 856 (1972).

Despite the fact that the instruction may comport with case law, defendant also asserts that Wisconsin law—decisional, constitutional, and statutory—prohibits placing an initial burden of persuasion upon the defendant to show inducement.[9]

The decision upon which defendant relies is *Moes v. State,* 91 Wis. 2d 756, 284 N.W. 2d 66 (1979), and he asserts that the language and rationale of *Moes* supersede

---

[9] Defendant acknowledges that the state, without transgressing federal law, may place the burden where it wishes on affirmative defenses, *i.e.,* those defenses that do not implicate proof of elements of the crime. *See, In re Winship,* 397 U.S. 358 (1970); *Mullaney v. Wilbur,* 421 U.S. 684 (1975); and *Patterson v. New York,* 432 U.S. 197 (1977).

473

previous formulations of the burden of proof to be imposed in affirmative defenses.

Under *Hawthorne* and its predecessors, the common law of Wisconsin is clear that, in cases where the evidence, if believed, is sufficient to convict a defendant beyond a reasonable doubt, the defendant may assert the affirmative defense of entrapment if he assumes the burden of persuasion to show that he was induced to commit the crime. In the event he has successfully assumed that burden by the *Hawthorne* standard, the burden then falls on the state to convince the jury beyond a reasonable doubt that, despite the government's inducement, the defendant was predisposed to commit the crime.

The defendant, however, asserts that, even if the instructions are true to *Hawthorne*, *Hawthorne* is not the law, and could not have been even at the time it was decided in 1969, because it is violative of the legislative directive of sec. 939.70, Stats., incorporated into the statutes at the time the substantive criminal code was revised in 1955. As a corollary and as a bolstering adjunct to his argument, the defendant relies on *Moes v. State, supra,* which he asserts adopted *"as a matter of state law"* the proposition that all affirmative defenses, including entrapment, must be treated the same as negative defenses and the burden to disprove an affirmative defense beyond a reasonable doubt "is imposed upon the state *as a matter of Wisconsin law.*"[10]

---

[10] Defendant argues that, when this court has stated that a rule is determined to be "a matter of state law," therefore we have concluded that the constitution of the State of Wisconsin requires that result and to in any way alter or reinterpret a rule found to be so as a matter of state law would at the minimum require the reexamination of Wisconsin's constitution. To hold that a question is decided as a matter of state law may mean only (1) that the protection afforded by the state constitution is greater than that afforded by the United States Constitution and we choose to rest a decision on state constitutional grounds, or (2) it may mean, as it does in this situation, that the United States Consti-

The argument is that this court's treatment of the co-ercion defense is determinative here—that all affirma-tive defenses are to be dealt with in the same way as nega-tive defenses as a matter of state law. To the extent, however, that *Moes'* treatment of the coercion defense is premised on the interpretation of sec. 939.70, Stats., *Moes* is irrelevant to how this court is required to treat the bur-den of proof in entrapment defenses. That statute pro-vides:

> **"939.70 Presumption of innocence and burden of proof.** No provision of chs. 939 to 948 shall be con-strued as changing the existing law with respect to pre-sumption of innocence or burden of proof."

This statute is on its face inapplicable, for not only is entrapment, unlike coercion, entirely and intentionally omitted from the criminal code, it is, as has been stated elsewhere in this opinion, a common-law, court-created defense. While the 1953 draft of the code would have spe-cifically included entrapment (Bill 100A, 1953) in the code revision and would have defined as affirmative de-fenses certain other specified defenses and all "[d]efenses introduced by words to the effect that the actor 'has a de-fense' . . .," it was decided by the Legislative Council on June 18, 1955, that those provisions be omitted from the bill. Thus, whatever the drafters of the code may have originally intended in respect to the burden of proof in

tution is not implicated at all, nor is the state constitution, hence this court may elect, as it did in *Moes* under the clear imprimatur of *Patter-son v. New York,* 432 U.S. 197 (1977), to decide the matter by state deci-sional law. To hold that a rule is a matter of state law merely means it is the law of the state—decisional, statutory, or constitutional. *Moes* is clear that its holding is decisional based upon the interpretation of sec. 939.70, Stats., and has no constitutional overtones. We deal with defendant's contention that *Moes* decided the burden-of-proof question in respect to all affirmative defenses, but, for the reasons stated in this note, the *Moes* decision is not one of constitutional proportions merely because this court made the decision as "a matter of state law."

the entrapment defense, that legislative intent was dispelled when the code was enacted in a different form, which did not include entrapment as a statutory defense.

Moreover, even the original 1953 bill was not intended to cover the burden of proof in all cases or in respect to all affirmative defenses. (*See,* Comment of Legislative Council to sec. 339.70, Bill 100A, 1953)[11]

There is nothing in the criminal code that purports to affect the burden of proof applicable to a nonstatutory affirmative defense or to a defense not encompassed in chs. 939 to 948, Stats.

Nevertheless, defendant contends that *Moes, supra,* controls the allocation of the burden of persuasion in this case. In fact, defendant goes so far as to state that:

> "[T]he court in *Moes* went one step further as it concluded affirmative defenses must be treated the same as negative defenses."

The statement in defendant's reply brief erroneously extrapolates the language of *Moes* which is applicable only to the statutory defense of coercion. The criminal code's express language limits the applicability of sec. 939.70, Stats., to statutory provisions. The sweeping language assertedly to be found in *Moes* is not there. Footnote 2, page 765, of *Moes* does indeed contain a summary of jury instructions pertinent to statutory and nonstatutory defenses and points out that, in respect to each, where there is sufficient proof to satisfy the defendant's burden of presenting the defense, *i.e.,* "introduces evidence to establish a statutory defense," the instructions then place the burden for *disproof* upon the state beyond a reasonable doubt. This footnote has significance in the context of the present case because it illustrates that *Moes* was not concerned with the question—at issue in

---

[11] Sec. 339.70, referred to in Bill 100A, was subsequently renumbered as sec. 939.70.

the instant case—of the burden of proof on the defendant in posing a defense for consideration, but only on the burden of the state for disproof—a question not at issue in the instant case.

Accordingly, *Moes* is irrelevant to the present case. To the extent that *Moes* holds, by way of dicta, that disproof of the entrapment defense once raised must be beyond a reasonable doubt, *Moes* supports Wis JI—Criminal 780, the judgment of the circuit court, and the decision of the court of appeals in the present case.

Defense counsel argues, however, that the final portion of Wis JI–780 given to the jury contravenes the uncontestably correct position of the portion of footnote 2 of *Moes* that the defense of entrapment, however established and by whatever burden of proof, must be disproved by the state "beyond a reasonable doubt." The final sentence of the entrapment instruction provides:

> "If you are satisfied from the evidence in this case, under the instructions I have given you, that the defendant was entrapped into committing the crime charged, you must find him not guilty."

Defense counsel asserts that this "inverted the burden of persuasion" because it advises the jury that the defendant "had the burden of proving he was entrapped rather than advising the jury the state had the burden of proving he was *not* entrapped."

We conclude that the defendant misinterprets the plain language used in the instruction. All the concluding sentence of the entrapment instruction purported to do was to define the responsibility of the jury after the defendant and the state had attempted to satisfy the respective burdens of proof placed upon them by other portions of the instructions.

"Entrapment" is defined in the very first sentence of the instruction as having two components, inducement

477

and predisposition.[12] "Entrapment" clearly, under the instruction, requires inducing of a nondisposed person to commit a criminal act.

The instruction, after entrapment is defined, then goes on to tell the jury the burden of persuasion necessary for finding each of these components—the first for showing inducement being upon the defendant, and the second for showing predisposition to commit the crime being upon the state.

Paragraph four of Wis JI—780 further defines entrapment as consisting of dual components, inducement by excessive incitement, urging, et cetera, *and* a defendant not already disposed, ready, and willing to commit the offense. That paragraph ends with the statement, not objected to, but substantially identical to the questioned portion, that, if those dual components are established, "the defense of entrapment is established, and you should find the defendant not guilty." This portion of the instruction again defines "entrapment" and the jury's obligation to reach a not guilty verdict if entrapment is established.

The instructions are clear that only if the defendant successfully assumes its burden of persuasion and the state defaults on its burden can there be "entrapment." It is only in that latter circumstance, where the state has failed in its burden of proof, that the jury should be satisfied the defendant was entrapped and should be found not guilty. The instruction merely informs the jury that, if "entrapment" is established after considering its separate components according to the burdens of proof outlined by the court, the defendant is to be found not guilty.

---

[12] "In law the term 'entrapment' refers to a defense available to a defendant whenever a law enforcement officer has used improper methods to induce him to commit an offense, and by the use of such methods has succeeded in inducing him to commit an offense which he was not otherwise disposed to commit."

In light of the clear and repeated definition of entrapment that appears in the body of the instruction, the statement to which defendant objects not only does not misstate the burden of persuasion, but indeed correctly states the jury's duty after its consideration of the factors detailed in the preceding portions of Wis JI—780.

Defendant also argues that for the jury to decide the question of whether the defendant has assumed the burden of persuasion is to allow the jury to second-guess the court—apparently because, the defendant concludes, the judge would not have submitted an entrapment instruction if he had not implicitly ruled that there were prima facie facts sufficient to show entrapment. This is not different from a multitude of jury submissions. The judge will only submit questions to the jury where there is relevant evidence, *i.e.,* evidence which if believed will tend to make an urged conclusion more or less certain. The finding or conclusion in respect to a fact issue, however, is for the jury. The jury does not second-guess the court. The jury's finding is the initial one.

Defendant also argues that the instructions are faulty because, should the jury determine that the defendant has not successfully discharged his burden of persuasion to show inducement, the jury will never get to the question of whether the defendant was "predisposed." This argument misconceives the nature of the entrapment defense. If the defendant cannot discharge the burden of persuasion that there was improper inducement, entrapment drops out as an issue in the case. A vital component has not been shown. In the absence of first showing inducement, it becomes irrelevant whether the defendant was "predisposed." As stated above, before the jury even considers the question of entrapment, it must be satisfied by proof beyond a reasonable doubt that the defendant intended the crime. Hence, in the absence of proof of improper inducement by the state, how the de-

fendant's criminal intent originated is inconsequential and the jury should not get to that question.

In summary, then, we point out that entrapment is an "affirmative" defense and not a negative defense, because it does not implicate an element of the crime. Once entrapment becomes an issue, all essential elements of the crime are taken as having been proved beyond a reasonable doubt. Only the question of the state's "bad conduct" and the "origin of the intent" to commit the crime remain. If "bad conduct," *i.e.,* inducement, is not proven, there remains the fact already proved, and in the context of this case, the proof of the element of intent, at the time of the crime's commission. Hence, there is no entrapment, and a verdict of guilty must follow. The defendant throughout the briefs and in oral argument overlooks the fact that the *Winship, supra, Mullaney, supra,* and *Sandstrom v. Montana,* 442 U.S. 510 (1979), teachings—that the burden of proof beyond a reasonable doubt of the elements of the crime is on the state—are not pertinent at the entrapment stage of a criminal case. Due process, in the sense required by those cases, is not implicated in the analysis of an affirmative defense. This court in *State v. Schulz,* 102 Wis. 2d 423, 429, 307 N.W.2d 151 (1981), recognized that the placement and degree of the burden in an affirmative defense is within a state court's prerogative. *Patterson v. New York, supra,* 432 U.S. at 206, relied upon in *Schulz,* decided that, in respect to an affirmative defense, a state may place a burden of proof upon a defendant as it sees fit, provided the affirmative defense does not serve to negate the elements of the crime which the state must prove in order to convict.

In short, there is nothing in the statutes, the legislative history of sec. 939.70, Stats., the common law of Wisconsin, or in federal law which prohibits or limits the right of this court to place the burden of persuasion by a preponderance of the evidence on a defendant to show

inducement—and, of course, the final burden, that of proving beyond a reasonable doubt that even an "induced" defendant had a prior disposition to commit the crime, concededly rests upon the state. Those burdens were correctly stated by this court in *Hawthorne* and were correctly incorporated in the jury instructions used in this case.

We find nothing in the instruction as given to the jury in this case[13] to warrant a reversal of the court of appeals.

*By the Court.*—Decision affirmed.

---

[13] In February 1985, an alternative version of Wis JI—Criminal 780 was proposed as Wis JI—Criminal 780A. As the committee stated:

"The major change accomplished by this version of JI-780 is the elimination of the double burden of proof. That is, under the 1971 version, the jury is advised that the defendant must first establish, by a preponderance of the evidence, that the government engaged in inducement. If the jury finds the defendant has satisfied that burden, they are advised that it is the state's burden to prove 'predisposition' beyond a reasonable doubt."

The committee considered this instruction to be preferable to the present JI-780 instruction, because "retaining the intermediate, preliminary burden of proof on the defendant was confusing" and likely to result in litigation. It, however, found no constitutional defect in the present instructions.

Significantly, the committee retained JI-780 "because it is consistent with Wisconsin case law." JI-780A is not at issue in the case before us. We take no position on whether or not it is preferable to, or less confusing than, the 1971 JI-780 version. We point out, however, consistent with the committee's comment, that the alternative instruction does not reflect the decisions as determined by *Hawthorne* and other holdings of this court.

We note, however, that the proposed version apparently retains the "origin of intent" emphasis now explicit in Wisconsin case law. The test remains "subjective" rather than "objective." In fact, even less emphasis would be placed upon a governmental agent's misconduct than heretofore. The question remains primarily, in Wisconsin, who took the bait and not how it was offered.