STATE of Wisconsin, Plaintiff-Respondent,

v.

Dustin C. PENCE, Defendant-Appellant.

Court of Appeals

*No. 88-1711-CR. Argued April 13, 1989.—Decided May 10, 1989.*

(Also reported in 442 N.W.2d 540.)

On behalf of the defendant-appellant, there were briefs by *Jeffrey A. Kaufman* and *Marna M. Tess-Mattner* of *Gimbel, Reilly, Guerin & Brown* of Milwaukee. There was oral argument by *Marna M. Tess-Mattner.*

On behalf of the plaintiff-respondent, there was a brief by *Donald J. Hanaway,* attorney general, and *Maureen McGlynn,* assistant attorney general. There was oral argument by *Maureen McGlynn,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J.    Dustin Pence appeals his conviction for delivery of a controlled substance. He argues that the trial court improperly concluded that evidence of his two subsequent refusals to sell drugs was irrelevant. We agree and reverse the conviction. The cause is remanded for the trial court to determine admissibility under sec. 904.03, Stats.

Pence was charged with selling approximately twenty-one grams of marijuana to Officer Scott Bretl on June 14, 1987. Pence was eighteen at the time and, on that very day, had graduated from high school. In the month prior to the offense, Pence was telephoned several times a week by Michael Moran, a school acquaintance, who asked Pence to obtain any of a variety of drugs for him. Pence repeatedly told Moran that Pence could not obtain drugs and that he was not a dealer.[1]

During this time, Moran was cooperating with local law enforcement authorities because he had been arrested for selling marijuana. Moran had "made a deal" to make a case against a certain number of people in exchange for consideration in his case.[2] His involvement in the police investigation lasted about four months, with the charged offense occurring near the beginning of this period. Pence testified that Moran's repeated calls intimidated and annoyed him.

---

[1] This testimony came in only through Pence. Moran did not testify, and Officer Bretl did not become involved in the case until the date of the offense.

[2] Recognizing that Moran's case is not before us, we nonetheless are compelled to express our grave concern over such a "deal." If Moran knew at the time of the "deal" of certain people about whom he possessed information, our concerns might be lessened. If, however, Moran was requested to "turn in" a certain number of citizens on the basis of future information, the "deal" may well be unconscionable.

Pence testified that ultimately on June 14, 1987, he set up a meeting with Moran for later that day, but had no intentions of going to the designated meeting place—a parking lot. Because Pence was going to leave the area that night to move to Door county with his father, Pence hoped that Moran would not find him and would leave him alone.

Pence testified that he told Moran he would get the marijuana from someone in Milwaukee, although he knew no such person. He also testified that Moran said he would be bringing a friend because he had been "ripped off" in the past and wanted to make sure he would get a good deal.

After graduation exercises and dinner with the family, Pence did some shopping with his father. Upon returning home, Pence saw Moran and his "friend," Officer Bretl, in the driveway. Moran and Officer Bretl had waited for Pence in the designated parking lot and then drove to Pence's home in Thiensville. At this point, Pence's and Officer Bretl's testimony differs somewhat. For the sake of completeness, we set forth both versions.

Officer Bretl testified that Pence got out of the car and said he could not get ahold of the person in Milwaukee. Pence then said he did not know what to do and immediately asked if Bretl had the money. When Bretl said he did have the money, Pence said it would be $100 and that he would be back in a few minutes.

Pence took Bretl's money and returned with a plastic bag of marijuana, which he gave to Bretl on the side of the garage so Pence's parents would not see it. Bretl asked for $10 back because he had accidently overpaid Pence, and Pence returned it. Bretl also testified that he asked Pence if he could buy more marijuana later and that Pence said marijuana was not a problem but

that "acid" or "mushrooms" would be more of a problem.

Pence's testimony differed in the following respects. He testified that when he saw Moran and Bretl in his driveway, he became nervous and upset, in part because Bretl was a big, stocky man. After Pence said that he had not contacted the person in Milwaukee and did not know what to do, Bretl seemed upset and said he needed the drugs for a party that night. Pence again said he did not know what to do. Pence testified that Bretl then said he wanted anything Pence could get—marijuana, acid or mushrooms—preferably in large quantities.

Pence testified that, at this point, he decided to try to get something for them from someone in Thiensville, hoping that would get rid of them. When he told Bretl this, Bretl requested an ounce of marijuana. Pence left, returned with marijuana, and gave Bretl the $10 when requested. Pence testified that Moran and Bretl then left.

From this point on in the sequence of events, we now have only Pence's testimony, part of which is corroborated by his father. Pence and his father left for Door county that night by car. During the trip, Pence told his father what had happened and that he had been afraid and had not wanted to do the deal. Pence testified that he felt guilty and upset.

Pence also testified that he had purchased marijuana in the past for his own personal use but that he had never sold any. He had previously shared marijuana with his friends. However, his brother had been arrested for dealing and, as a result, Pence had not shared marijuana in the year prior to June 14, 1987, because of his desire to avoid problems.

The evidence excluded by the trial court was testimony that, on two occasions subsequent to June 14,

Bretl asked Pence to obtain drugs for Bretl and to obtain them from Joseph Anderson. On the first of these occasions, Moran was with Bretl. On both occasions, Pence refused to obtain any drugs.

Entrapment is a defense available to a defendant who has been induced by law enforcement to commit an offense which the defendant was not otherwise disposed to commit. *See* Wis J I—Criminal 780; *see also State v. Saternus,* 127 Wis. 2d 460, 477–78, 381 N.W.2d 290, 298 (1986). Wisconsin has adopted the subjective "origin of intent" doctrine rather than an objective test. *Id.* at 469–70, 381 N.W.2d at 294. The subjective test focuses on the reason for the defendant's state of mind which led to the intent to commit the crime, *i.e.,* whether the police conduct affected or changed a particular defendant's state of mind. *Id.* at 470, 381 N.W.2d at 294.

Proving entrapment is a two-step process. First, the defendant must prove by a preponderance of the evidence that he or she was induced by law enforcement to commit the crime. *See id.* at 480–81, 381 N.W.2d at 299. The state then bears the burden of proving beyond a reasonable doubt that the defendant had a prior disposition to commit the crime. *Id.* at 481, 381 N.W.2d at 299.

At issue here is the second prong—predisposition. Pence sought to introduce the evidence of his subsequent refusals to show he had not been predisposed to commit the crime on June 14, 1987. The trial court excluded the evidence on the ground it was irrelevant.

A trial court's determination of relevancy will be upheld unless it constitutes an abuse of discretion. *State v. Pharr,* 115 Wis. 2d 334, 345, 340 N.W.2d 498, 503 (1983). The trial court must exercise its discretion in

accordance with accepted legal standards and the facts of record. *State v. Alsteen,* 108 Wis. 2d 723, 727, 324 N.W.2d 426, 428 (1982). The record should reflect that discretion was exercised and that the trial court undertook a reasonable inquiry and examination of the facts. *Id.* at 727-28, 324 N.W.2d at 428.

We have carefully examined the trial court's decision on this evidentiary ruling and conclude that the rationale behind it is not entirely clear.[3] We read the decision to say that *any* evidence of acts subsequent to the time of the offense are irrelevant. This does not reflect a correct statement of the law, for reasons stated more fully later.

The state reminds us that we are obliged to search the record to determine whether, in the exercise of proper discretion, the trial court's evidentiary ruling can

---

[3] Excerpts of the trial court's decision are as follows:

Well, I go back to when I was explaining affirmative defenses to the jury when I used the example of the [insanity] defense in a homicide. There, evidence as to the person's mental condition at the time of the act, or prior thereto is certainly relevant and competent. And that's what we are looking at. But what happened after the act was committed might go to his mental capacity and competency to stand trial, but not as to the issue of whether he was suffering a mental illness or defect at the time that the act was committed. And therefore, I would rule that testimony as to the relationship between Bretl or Moran and the defendant after June 14th is not relevant to the element of predisposition here.

. . . ..

Well, I don't think it's relevant to this issue here . . . .. And I don't think I am concerned with it here.

. . . ..

As to the affirmative defense here. That's what I am talking about, the relevance of that. I can see in some other cases where it would be totally relevant, if it's modus operandi or opportunity, if the intent is necessary.

be sustained. *McCleary v. State,* 49 Wis. 2d 263, 282, 182 N.W.2d 512, 522 (1971). We have done so and conclude that the trial court's determination that the evidence was irrelevant was in error.

■ Wisconsin courts have previously concluded that evidence of conduct occurring after the charged offense is admissible to rebut the defense of entrapment. *State v. Monsoor,* 56 Wis. 2d 689, 703–04, 203 N.W.2d 20, 27–28 (1973); *see also Aller v. State,* 61 Wis. 2d 740, 741, 214 N.W.2d 431, 432 (1974) (per curiam on motion for rehearing). Such evidence is considered relevant to the issue of predisposition. *Monsoor,* 56 Wis. 2d at 703–04, 203 N.W.2d at 27–28.

However, we have found no Wisconsin case which has decided which, if any, of the rules of evidence apply to such predisposition evidence, be it prior or subsequent to the time of the charged offense. Some courts treat predisposition as character evidence admissible under the equivalent of our sec. 904.04(1)(a), Stats.,[4] others treat it as "non-character" evidence admissible for other purposes under sec. 904.04(2), and some commentators would reconcile it by treating it as a rule of substantive law separate from the evidence rules. *See McCormick on Evidence* 552 n. 4 (E. Cleary 3d ed. 1984). While the third option has not gained much acceptance, we consider either of the first two options to be viable. For reasons stated below, we conclude that there is no fundamental difference, for the purposes of this case, in the operation or application of either sec. 904.04(1)(a) or 904.04(2).

---

[4] The applicable Wisconsin statutes are nearly identical to the federal evidence rules. *Compare* secs. 904.04, 904.05, Stats. *with* Fed. R. Evid. 404, 405.

If we were to accept some courts' conclusion that predisposition raises an issue of character, *see, e.g., United States v. Murzyn,* 631 F.2d 525, 528–29 & n. 2 (7th Cir. 1980), we would be governed by sec. 904.04(1)(a), Stats., which reads:

> **(1)** CHARACTER EVIDENCE GENER-ALLY. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
> (a) *Character of accused.* Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same[.]

Because predisposition thus becomes an element required to be proven by the state, specific instances of conduct are admissible under sec. 904.05(2), Stats. *Murzyn,* 631 F.2d at 528 n. 2. Section 904.05(2) provides:

> **(2)** SPECIFIC INSTANCES OF CONDUCT. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

The majority rule, however, appears to consider predisposition as a "state of mind at a particular time," rather than a more general character issue, and requires such evidence to be admitted through the equivalent of sec. 904.04(2), Stats. *See United States v. Richardson,* 764 F.2d 1514, 1522 & n. 2 (11th Cir.), *cert. denied,* 474 U.S. 952 (1985). Section 904.04(2) provides:

> **(2)** OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order

> to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Some courts in this category consider predisposition as an issue of knowledge or intent, *see Richardson,* 764 F.2d at 1522-23, while others would interpret "other purposes" to include proof of predisposition, *see Murzyn,* 631 F.2d at 529 n. 2.

Under sec. 904.04(2), Stats., as with sec. 904.05(2), Stats., evidence of specific acts is admissible. In addition, neither statute excludes acts occurring subsequent to the charged offense. As mentioned earlier, case law explicitly allows such acts. *See Monsoor,* 56 Wis. 2d at 703-04, 203 N.W.2d at 27-28.

This is not to say that all subsequent acts are *per se* admissible, but neither are they *per se* inadmissible, as the trial court apparently concluded. Here, because Pence's two refusals were subsequent to the charged offense, the trial court concluded they were irrelevant to his predisposition. We disagree.

Pence's theory of defense was that the only reason he sold the marijuana on June 14, 1987, was the unusual circumstances of the situation, *e.g.,* the relentless phone calls, his imminent departure from the area, and his failed attempt to avoid meeting with Moran and Bretl altogether. Pence wanted to use evidence of his two subsequent refusals to highlight the uniqueness of the original situation and to allow an inference that he had not been predisposed on June 14, 1987, to commit the crime. Inasmuch as subsequent *sales* are relevant when offered by the state on the issue of entrapment, *see Aller,* 61 Wis. 2d at 741, 214 N.W.2d at 432, we conclude that

subsequent *refusals* to sell, under similar circumstances, are relevant when offered by the defendant.[5] Because the trial court made an error of law in determining that all subsequent acts are irrelevant, an abuse of discretion resulted.[6] *See Schmid v. Olsen,* 111 Wis. 2d 228, 237, 330

[5] This case differs from *State v. Oberlander,* 149 Wis. 2d 132, 438 N.W.2d 580 (1989). In *Oberlander,* the supreme court reversed the court of appeals' determination that a particular piece of evidence was relevant and should have been admitted. *Id.* at 134, 438 N.W.2d at 580–81. The trial court there ruled that "other acts" evidence of a third party was irrelevant and would result in a separate trial on an unrelated area. *Id.* at 137, 438 N.W.2d at 581–82. The trial court examined the facts of the case, utilized the appropriate law, and reached a reasonable decision *specific to that case. Id.* at 144, 438 N.W.2d at 584. Although unnecessary, the trial court also appeared to consider the balancing test of sec. 904.03, Stats. *Id.* at 137, 438 N.W.2d at 581–82.

In our case, on the other hand, the trial court interpreted the law as requiring a blanket exclusion of any "other acts" evidence occurring subsequent to the charged offense. The trial court's decision was premised almost entirely on this incorrect statement of the law. (In *Oberlander,* the trial court's decision was based as strongly on relevancy as it was on "other acts" evidence. *See id.* at 140, 438 N.W.2d at 583.) We review this case under the abuse of discretion standard, as the supreme court did in *Oberlander. Id.* at 142, 438 N.W.2d at 584. However, it is the trial court's failure to use "accepted legal standards" which distinguishes our case from *Oberlander* and results in a reversal for abuse of discretion. *See id.* at 140–41, 438 N.W.2d at 583.

[6] Even if we were to read the last portion of the trial court's decision, *see supra* note 3, to indicate that the trial court was not making a "blanket" exclusion, we would still be compelled to reverse. The trial court intimated that the evidence would be relevant in cases where it came within the exceptions of sec. 904.04(2), Stats. However, the court failed to consider whether the proffered evidence did in fact come within these exceptions, thus failing to examine the relevant facts and to place on the

N.W.2d 547, 552 (1983).

Following a determination that evidence is relevant, the trial court must next consider whether the evidence's probative value is outweighed by: (1) the danger of unfair prejudice, confusion of the issues, or misleading the jury; or (2) by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *See Barrera v. State,* 99 Wis. 2d 269, 278 & n. 4, 298 N.W.2d 820, 824 (1980), *cert. denied,* 451 U.S. 972 (1981); *see also* sec. 904.03, Stats. Here, because the trial court erroneously concluded that the evidence was irrelevant, it did not conduct a balancing test under sec. 904.03. Although we see nothing on the face of the record which would warrant an exclusion, we recognize that it is not our role to conduct a balancing test independently of the trial court. *Barrera,* 99 Wis. 2d at 282, 298 N.W.2d at 826.

We therefore reverse the judgment of conviction and remand to the trial court for a determination of whether the probative value of the evidence is outweighed by the other considerations of sec. 904.03, Stats.[7] If the trial court concludes that the evidence, although relevant, should be excluded, the judgment is to be reinstated. If, however, the trial court determines that sec. 904.03 does not require exclusion of the evidence, a new trial shall be ordered.

---

record a demonstrated rational process. *See In re B.W.S.,* 131 Wis. 2d 301, 315, 388 N.W.2d 615, 622 (1986).

[7] The trial court may, in its discretion, allow additional arguments or testimony prior to reaching its determination. Further, any consideration of undue delay or waste of time should not be premised on the possibility of a new trial.

*By the Court.*—Judgment reversed and cause remanded with directions.