STATE of Wisconsin, Plaintiff-Respondent,

v.

Becki A. HILLESHIEM, Defendant-Appellant.†

Court of Appeals

*No. 91–1237–CR. Submitted on briefs February 5, 1992.—Decided October 29, 1992.*

(Also reported in 492 N.W.2d 381.)

†Petition to review denied.

6

For the defendant-appellant the cause was submitted on the briefs of *Margaret Danielson* of *Danielson Law Office* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Christopher G. Wren*, assistant attorney general.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J.    Becki Hilleshiem appeals from her conviction on ten counts of delivery of a controlled substance and party to the crime of delivery of a controlled substance, contrary to secs. 161.41(1)(c)1., 161.41(1)(h)1. and 939.05, Stats. The issues are: (1) whether the trial court erred by refusing to give an entrapment instruction on eight counts; (2) whether the trial court erred in four evidentiary rulings during trial; and (3) whether the trial court abused its sentencing discretion.

We conclude that the trial court did not err in refusing to give the entrapment instruction. We also conclude that any error by the trial court in its evidentiary rulings was harmless and that the court did not abuse its discretion at sentencing. Therefore, we affirm.

The charges against Hilleshiem arose out of an undercover operation conducted in Richland county. Steve Owen was an agent in this operation, using the alias Steve Sandtini. Owen became acquainted with Hilleshiem in August 1988 and participated in numerous drug transactions with her from October 1988 until her arrest in August 1989. The jury convicted her on six counts of delivery of cocaine, two counts of delivery of THC (the active ingredient in marijuana), and two counts of being a party to the crime of delivering cocaine. It acquitted on five similar charges.

## I.   ENTRAPMENT

Hilleshiem requested an entrapment instruction on thirteen counts. The court granted it on four. Hilleshiem argues that her convictions on counts 2, 3, 5-8, 10, and 13 should be reversed because of the court's failure to properly instruct the jury.

Entrapment is a defense to a charge when the "evil intent" and the "criminal design" of the offense originate in the mind of the government agent, and the defendant would not have committed an offense of that character except for the urging of the government. *State v. Saternus*, 127 Wis. 2d 460, 469, 381 N.W.2d 290, 294 (1986). To establish the defense of entrapment, the defendant must show by a preponderance of the evidence that she was induced to commit the crime. *Id.* at 472, 381 N.W.2d at 295. If the defendant meets her burden of persuasion, then the burden falls on the state to prove

8

beyond a reasonable doubt that the defendant was predisposed to commit the crime. *Id.* at 474, 381 N.W.2d at 296. Because the defense of entrapment allows a person, who under normal circumstances would be guilty, to go free, it is disfavored in the law and should not be entertained lightly by the courts. *State v. Bjerkaas*, 163 Wis. 2d 949, 955, 472 N.W.2d 615, 617 (Ct. App. 1991).

The fact that a government agent furnishes the accused with an opportunity to commit the crime does not by itself constitute entrapment. *State v. Hochman*, 2 Wis. 2d 410, 414, 86 N.W.2d 446, 448 (1957). Furthermore, the law permits law enforcement officers to engage in some inducement, encouragement, or solicitation in order to detect criminals. Wisconsin J I—Criminal 780.[1] Thus, entrapment will only be established if the law enforcement officer used *excessive* incitement, urging, persuasion, or temptation, and prior to the inducement, the defendant was not already disposed to commit the crime. *Id.* In the context of narcotics transactions, merely seeking or offering to buy drugs is not the kind of inducement which establishes entrapment. *Bjerkaas*, 163 Wis. 2d at 955, 472 N.W.2d at 617.

A trial court is justified in declining to give a requested instruction in a criminal case, including an instruction on the defense of entrapment, if it is not reasonably required by the evidence. *Id.* at 954, 472 N.W.2d at 617. When the appeal is from a denial of a requested instruction, we will view the evidence in the most favorable light it will reasonably admit from the

---

[1] The supreme court reviewed this instruction in *Saternus* and held that it "fully comports" with the law on entrapment in Wisconsin. 127 Wis. 2d at 472, 381 N.W.2d at 295.

9

standpoint of the accused. *Johnson v. State*, 85 Wis. 2d 22, 28, 270 N.W.2d 153, 156 (1978).

Before applying the above standards to the record on each count for which the instruction was denied, we address two other arguments Hilleshiem raises concerning the entrapment defense. First, relying on *Sherman v. United States*, 356 U.S. 369, 374 (1958), Hilleshiem claims that in a multiple-count case, it is appropriate for this court to view each count as part of a continuing course of conduct rather than as an isolated transaction.[2] With the former approach, it would not be necessary for Hilleshiem to prove that Owen explicitly offered her money or cocaine before each transaction to establish entrapment.

We disagree that *Sherman* requires a continuing course of conduct approach in our review. In *Sherman*, a government informer met the defendant in a doctor's office where both were being treated for drug addiction. After repeated requests and appeals to the defendant's sympathy, the defendant delivered narcotics to the informer. The defendant was convicted for three sales made to the informer after he had alerted government agents. The Court rejected the government's attempt to isolate the three sales its agents observed from the previous sales. Instead, the Court chose to view all of the sales

---

[2] Hilleshiem characterizes the continuing course of conduct between her and Owen as a "long-term, police-manufactured friendship." She argues that Owen's efforts to win her friendship, such as taking her to dinner, discussing the possible sponsorship of her band, or picking her son up at the roller rink, could prove inducement on all of the counts for which she requested the entrapment instruction. We disagree. As we stated in *Bjerkaas*, simply cultivating a friendship with a person later arrested for selling drugs does not constitute entrapment. 163 Wis. 2d at 956, 472 N.W.2d at 617.

10

as a continuing course of conduct. As the case at bar does not involve a government informer from whose actions the government is trying to dissociate itself, it is not controlled by *Sherman*.

We also reject the continuing course of conduct approach because it expands the concept of entrapment, resulting in a disfavored defense becoming more readily available.

Hilleshiem's second argument is that we should consider her cocaine addiction, which rendered her "powerless" to resist Owen's offers, when deciding if there was sufficient evidence of inducement to give the entrapment issue to the jury. We reject this suggestion as unsound policy. As addicts are frequently the people who deliver controlled substances, Hilleshiem's proposed modification to the entrapment defense would allow those most likely to engage in such criminal activity to escape conviction. Such a modification would have negative consequences for law enforcement and the public welfare. We note that other jurisdictions have similarly refused to make an allowance for addiction when the defendant asserts entrapment in a narcotics delivery case.[3]

---

[3] *See United States v. Molinaro*, 877 F.2d 1341, 1350 (7th Cir. 1989) (evidence that government informant had "less than stellar character," coupled with fact that he had previously provided free cocaine to the defendant, an unemployed, unwed mother with a cocaine habit, was insufficient to raise jury question of government inducement and lack of predisposition); *People v. Jackson*, 253 N.E.2d 527, 530 (Ill. App. Ct. 1969) (affirming trial court's refusal to instruct on theory that defendant was victim of entrapment because police induced offense by preying upon defendant's need for narcotic drugs).

11

We now review the record on each count to determine whether the evidence[4] reasonably required the entrapment instruction.

## Count 2

Hilleshiem testified that on October 27, 1988, Owen came into the music shop where she worked, looking for cocaine. When she told him that she had none, he asked if she could get him some. She asked: "What am I going to get you some for if I can't get some?" After Owen said he would buy her some cocaine without specifying any quantity, Hilleshiem called up Bob Larsen to set up a deal. The two then drove to Larsen's house, where Hilleshiem brought Larsen over to Owen's car and the sale of a gram of cocaine was completed. When they got to Hilleshiem's house later that evening, after attempting to contact the dealer involved in the third count, they split the gram roughly in half.

■

Viewing the evidence in the light most favorable to Hilleshiem, the record suggests that Owen did nothing more than seek cocaine and furnish Hilleshiem with an opportunity to commit the crime of delivering it. There was no substantive difference between Owen's offer to give Hilleshiem some cocaine in exchange for arranging the deal and an offer to buy made directly to a dealer which would allow the dealer a profit on the sale. Furthermore, Hilleshiem's own testimony indicated that she was willing to act as an intermediary regardless of the amount of cocaine or profit that she would obtain. We conclude that no reasonable juror could infer from the

---

[4] To ensure that we view the evidence in a light most favorable to Hilleshiem, the facts reviewed in our discussion are taken from her testimony on both direct and cross-examination.

evidence that Owen used the kind of "excessive" temptation that is necessary for entrapment.

### Count 3

After Owen purchased the gram from Larsen, he told Hilleshiem that he wanted more cocaine. When Larsen informed them that Bryan Nutter had some available, Hilleshiem directed Owen to Nutter's place that same evening. Nutter was not home, so Hilleshiem left him a note telling him to come to her house as soon as possible because "[t]here is all the money in the world that you need." Eventually Nutter showed up at Hilleshiem's house with another man, Shane Harsha. Hilleshiem, Nutter, and Harsha went into her bedroom, and she asked Nutter if he had any extra cocaine to sell. Hilleshiem told Nutter that Owen had a lot of money and that Nutter could make a good connection if he sold some of his cocaine to Owen. Hilleshiem emerged from the bedroom, informing Owen that Nutter had three grams to sell at $125 per gram. After Owen balked at the price, Hilleshiem returned to the bedroom, and when she came out, she announced that the price was $100. Owen then gave her $300 and she delivered three grams of cocaine to him.

There is simply no evidence on this count that supports an inference that Owen used any inducement, let alone excessive incitement, to obtain Hilleshiem's cooperation in purchasing cocaine. Hilleshiem facilitated the Nutter transaction without any promises of additional cocaine for doing so, or any further encouragement from Owen. In fact, Hilleshiem was uncertain whether Owen gave her any of the cocaine purchased from Nutter, and she testified on direct examination that she proceeded with this transaction to help Nutter.

13

## Count 5

Hilleshiem testified that Owen came to her house on December 3, 1988. She was happy to see him because she had some cocaine in her possession that she could not afford and she was "getting real freaked out" after binging on it. Owen had barely entered the house when Hilleshiem begged him: "Please take this stuff off my hands . . .." She stated that she was so insistent that she "grabbed his arm and practically tore it off." According to Hilleshiem, after she told him she did not have the money to pay for the cocaine she had ingested, Owen offered her $300 for the remainder (worth approximately $80) to help her pay her cocaine debt. She then gave him the cocaine from her purse.

As Owen merely made an offer to buy, the evidence is insufficient to establish entrapment.

## Count 6

On December 9, 1988, Owen visited Hilleshiem at the music shop. According to her, Owen wanted some cocaine and wanted to meet her dealer, Tony Naper. Owen offered her $200 simply to arrange the meeting and she agreed. Hilleshiem had Owen bring along his digital scale because Naper wanted to see it after hearing about it from her. Owen stayed in the car while she took the scale into Naper's apartment. A short while later, Hilleshiem had Owen come into Naper's bedroom to show them how to run the scale. Owen then was told to go into the living room where he waited until either Hilleshiem or Naper came out and asked him how much cocaine he wanted. Owen asked for as much as Naper had and eventually Hilleshiem handed Owen a bag con-

14

taining five grams of cocaine.[5] Naper then told Owen that all future deals between them would go through Hilleshiem. After the deal was completed, Owen gave Hilleshiem half of a gram of cocaine in addition to the $200 for setting up the meeting.

Owen's monetary offer for a mere introduction to Hilleshiem's dealer, a legal act, hardly constitutes entrapment. There was no evidence that Owen requested that Hilleshiem facilitate a cocaine purchase or do anything apart from introducing him to Naper. Nor can the half of a gram he gave her as an after-the-fact reward be considered an improper inducement. Hilleshiem could not reasonably have expected to receive any compensation above and beyond the $200 already offered to link Owen and Naper.

## Count 7

Hilleshiem testified that Owen came to the music shop on January 23, 1989, and asked: "What's around?" She stated that whenever Owen sought drugs, he would ask for both cocaine and marijuana. She told him: "Well, you're in luck. Someone just called me and said they have some pot. Do you want some still?" Owen replied affirmatively.

Then Hilleshiem said: "Well, let's wait 'til 5:00 when I get off work, and I'll go over and get it for you, but I need some money for my trouble." Owen paid her $320 for the marijuana, which was $140 above Hilleshiem's cost. When they arrived at Steve Ruetten's

---

[5] On cross-examination, Hilleshiem first testified that she could not remember whether she or Naper handed the cocaine to Owen. Later, she stated that she did not dispute Owen's testimony that she was the one who did so.

house, Hilleshiem went in, purchased the marijuana, and then brought it out to Owen's car.

As Owen only went looking for drugs and then made an offer to buy, we conclude that the trial court's ruling on the entrapment instruction was correct.

## Count 8

On the evening of January 23, 1989, Owen and Hilleshiem were at her house when she asked to borrow money to buy cocaine from Naper. The money she earned earlier that day from the marijuana sale was not enough to pay off her debt to Naper and purchase new cocaine. Owen gave her $100 to buy a gram on the condition that she give him some of it. Since Owen only wanted a small portion, Hilleshiem gave him a quarter of a gram.

Hilleshiem argues that the loan provided sufficient evidence of inducement to get the issue of entrapment before the jury. We disagree. As the loan was proposed by Hilleshiem, it could hardly be characterized as the excessive temptation to entrap her.

## Count 10

On March 26, 1989, Hilleshiem informed Owen that her boyfriend, Russell Dieter, was coming from Minneapolis with "some real good coke." After Dieter arrived, Hilleshiem called Owen and he drove to her house, where the sale of seven grams of cocaine was executed. *After* the sale, Owen let Hilleshiem help herself to approximately a gram from the bag of cocaine, and he gave her $400 to help her pay her bills.

16

As Hilleshiem was the one to solicit the sale, we fail to see how a reasonable juror could conclude that the "criminal design" originated with Owen. Furthermore, the record is void of any evidence of excessive incitement. Hilleshiem said nothing on direct examination about any promises made by Owen prior to the sale, and on cross, she admitted that the $400 was an after-the-fact reward for her efforts.

## Count 13

On May 27, 1989, Owen went over to Hilleshiem's house looking for cocaine. Hilleshiem told him to find her friend Jeff Stafford, who had just left to get some cocaine for the two of them. Owen caught up with Stafford and Stafford told Owen to wait for him at Hilleshiem's house. When Stafford arrived, he gave the cocaine to Hilleshiem, who then gave Owen his share.

Because there is no evidence whatsoever of inducement, we conclude that the trial court appropriately denied the entrapment instruction.

## II.   EVIDENTIARY RULINGS

### A.   Defense Investigator

Hilleshiem argues that the trial court erred in excluding the testimony of Andrea Murphy, a defense investigator, which would have impeached a state witness, Tammy Teach. The trial court based its ruling on the defense's failure to provide the prosecution with a copy of Murphy's notes from her interview with Teach before Teach took the stand. The court held that the omission constituted a discovery violation under sec.

17

971.24, Stats.,[6] and consequently, refused to allow Murphy's testimony.

Because the state concedes that the trial court erred, we only address whether the error was harmless. An error is harmless if there is no reasonable possibility that it contributed to the conviction. *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231-32 (1985). We conclude the exclusion of Murphy's testimony was harmless error.

Teach was a minor witness for the prosecution. Her testimony occupies only four of the more than 750 pages of trial transcript. On direct examination, Teach stated that she was at Hilleshiem's house on October 6, 1988, when Hilleshiem offered to provide her with cocaine. This alleged offer occurred on the same date and in the same place as Hilleshiem's offer of cocaine to Owen which was charged in the first count. She also claimed that Hilleshiem had offered to get her cocaine six or seven times prior to that date.

On cross-examination, Teach made three statements which conflicted with Murphy's notes: (1) that she did not admit to Murphy that she sold cocaine to Hilleshiem on three or four occasions; (2) that she did not express her opinion to Murphy that Owen fed Hilleshiem's habit; and (3) that she liked Hilleshiem.

We conclude that the absence of Murphy's surrebuttal testimony had no effect on the outcome of the trial for several reasons. First, the defense seriously impeached Teach's credibility on cross-examination. In addition to highlighting inconsistencies between Teach's testimony and Murphy's notes, the defense questioned

[6] Section 971.24(1), Stats., reads in part:

> At the trial before a witness other than the defendant testifies, written or phonographically recorded statements of the witness, if any, shall be given to the other party in the absence of the jury.

Teach about a police report to the effect that Teach had attempted to run Hilleshiem over with her car. The defense also elicited the fact that she was the sister-in-law of Bill Teach, Hilleshiem's boyfriend who had committed suicide, and thus established a motive for Teach to testify falsely.

Second, Teach's testimony had little bearing on any of the counts charged other than the first. On that count, Teach's testimony was peripheral at best. The jury had already heard testimony from Owen, Hilleshiem, and Laurie Blanchard regarding the events covered by the first count, and Teach's testimony did not resolve discrepancies in the accounts of those witnesses.

## B.  Threats to Owen

Hilleshiem contends the trial court erred in allowing Owen's testimony that other officers had warned Owen about threats made by her against him and his family. Defense counsel objected on hearsay grounds. The trial court correctly overruled the objection because the testimony was not offered to prove the truth of the matter asserted. *See* sec. 908.01(3), Stats. Rather, it was offered to demonstrate why Owen had testified in other cases under his alias, Steve Sandtini.

At counsel's request, the trial court then gave the limiting instruction to the jury that the testimony concerning the threat was accepted not for its truth, but to show why Owen testified under an alias. Hilleshiem argues that despite the instruction, the testimony was too prejudicial and should not have been allowed.

We affirm the admission of the testimony because the trial court gave a proper admonitory instruction during Owen's testimony. We presume that the jury followed the properly given instruction and acted according

19

to law. *State v. Pitsch*, 124 Wis. 2d 628, 645 n.8, 369 N.W.2d 711, 720 n.8 (1985). While we recognize that there may be cases where "the risk of prejudice inhering in material put before the jury may be so great" that a limiting instruction will not adequately protect a defendant's constitutional rights, this is not one of those cases. *Id.* (quoting *Francis v. Franklin*, 105 S. Ct. 1965, 1976 n.9 (1985)).

## C.   Owen's Truthfulness

Hilleshiem argues that the trial court erred by not allowing a defense witness to give his opinion of Owen's character for truthfulness. The witness, Roger Godskey, was Owen's supervisor when Owen worked as a ranger for the St. Paul (Minnesota) Parks Department. Hilleshiem maintains that such testimony is admissible under sec. 906.08(1), Stats.[7] The state claims the exclusion was proper under *State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673, 676 (Ct. App. 1984) (no witness, expert or otherwise, should be permitted to give an opinion that another witness is telling the truth).

Because Godskey was asked for his opinion of Owen's truthfulness during the period he worked with Owen, and not whether Owen told the truth at this trial, the trial court erred in excluding Godskey's answer. However, after applying the *Dyess* test, we conclude the error was harmless for several reasons.

---

[7] Section 906.08(1), Stats., provides in relevant part:

   [T]he credibility of a witness may be attacked or supported by evidence in the form of reputation or opinion, but subject to these limitations: (a) the evidence may refer only to character for truthfulness or untruthfulness, and (b), except with respect to an accused who testifies in his or her own behalf, evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

First, Godskey described in detail an incident in which Owen, while off duty, lied to a park visitor about being an undercover ranger. The incident resulted in Owen's suspension. Second, Godskey testified that Owen's reputation for truthfulness within the department was "questionable." Finally, Godskey's testimony constituted a significant attack on Owen's credibility and permitted the jury to infer that Godskey did not have a favorable opinion of Owen's character for truthfulness. We conclude that Godskey's expression of his opinion would have added very little to the weight of his previous testimony and that there was no reasonable possibility that the error contributed to Hilleshiem's convictions.

### D.    Redacted Complaint

Hilleshiem claims that the trial court erred in allowing a redacted version of the criminal complaint to go to the jury as an exhibit. She asserts that the complaint had no probative value and that it was prejudicial for the jury to see it.

It is within the discretion of the trial court to determine what exhibits are permitted in the jury room. *State v. Jensen*, 147 Wis. 2d 240, 259, 432 N.W.2d 913, 921 (1988). The criteria for the trial court to consider are "whether the exhibit will aid the jury in proper consideration of the case, whether a party will be unduly prejudiced by submission of the exhibit, and whether the exhibit could be subjected to improper use by the jury." *Id.* at 260, 432 N.W.2d at 921-22.

Virginia Cupp, a Richland county deputy sheriff, testified that she questioned Hilleshiem shortly after her arrest. Cupp had Hilleshiem read through the complaint

and then asked her if all of the facts contained therein were true. According to Cupp, Hilleshiem did not dispute the events described. Her only comments regarding the complaint's factual accuracy were that she could not verify all of the dates and that Owen was the one buying the cocaine.

The trial court admitted the complaint as an exhibit, reasoning that, to the extent that she referred to it in her interview with Cupp, Hilleshiem had adopted it as part of her statement. However, before permitting the complaint to go to the jury room, the trial court deleted portions such as the penalty section which it believed could be prejudicial to the defense. Moreover, the court gave the jury an instruction limiting its use of the complaint.

We conclude that the trial court's decision to send a redacted copy of the complaint to the jury was a reasonable exercise of its discretion. The complaint had probative value as part of Hilleshiem's statement, and the trial court took reasonable measures to ensure that the defense was not unfairly prejudiced.

## III. SENTENCING

Hilleshiem argues that the trial court abused its discretion in sentencing her to fourteen years in prison when the prosecutor and the presentence report recommended total imprisonment of seven and ten years, respectively. She also claims that in imposing the sentence, the trial court "considered an improper factor, weighed some factors too heavily, and completely ignored other, mitigating factors."

In passing sentence, the trial court is presumed to have acted reasonably, and the defendant has the burden

of showing an unreasonable or unjustifiable basis in the record for the sentence. *State v. Roubik*, 137 Wis. 2d 301, 310, 404 N.W.2d 105, 108 (Ct. App. 1987). We will not interfere unless the court abused its discretion, and we will find no abuse of discretion if there is a reasonable basis for the court's determination. *State v. Scherreiks*, 153 Wis. 2d 510, 517, 451 N.W.2d 759, 762 (Ct. App. 1989).

A trial court must articulate the basis for the sentence imposed on the facts of record. *State v. Harris*, 119 Wis. 2d 612, 623, 350 N.W.2d 633, 639 (1984). The primary factors the sentencing court should consider are the gravity of the offense, the character of the offender, and the need to protect the public. *Scherreiks*, 153 Wis. 2d at 517, 451 N.W.2d at 762. The weight to be accorded each factor is within the discretion of the trial court. *Id.* While the recommendation in the presentence report may be a relevant factor in determining the sentence, it is not binding on the sentencing court. *State v. Johnson*, 158 Wis. 2d 458, 469, 463 N.W.2d 352, 357 (Ct. App. 1990).

At the sentencing hearing, the trial court addressed each of the primary factors listed above. The court discussed the gravity of the offenses, noting that the maximum possible sentence was forty-six years and that Hilleshiem had acted as a facilitator in many of the drug deals. The court also considered Hilleshiem's character, examining her need for rehabilitation and the sentencing option that would best achieve that goal. In addition, the court considered the public's protection and concluded that probation would not adequately serve that end. Finally, the court cited the need to deter others from delivering controlled substances.

We conclude that the factors considered by the trial court provide a reasonable basis for the sentence it imposed and that, contrary to Hilleshiem's claims, its findings are supported by the record. Furthermore, we reject Hilleshiem's contention that the trial court improperly used her sentence to send a message to drug dealers in Milwaukee,[8] and we conclude that Hilleshiem has not met her burden of demonstrating an unreasonable basis for the sentence. Therefore, we uphold the trial court's sentence.

*By the Court.*—Judgment affirmed.

SUNDBY, J. *(concurring in part; dissenting in part).* I dissent from the court's mandate and so much of its opinion as holds that the evidence on all counts did not require an instruction on the defense of entrapment.

At the outset it is important to note that the defendant, Becki Hilleshiem, was not charged with possession of a controlled substance, but with fifteen counts of delivery of a controlled substance, or party to the crime of delivery of a controlled substance. She requested that the jury be instructed on entrapment on all counts except counts one and twelve. However, the court gave the instruction only on counts four, nine, fourteen and fifteen. On three of the counts on which the instruction was given, Hilleshiem was acquitted.

The state analyzes Hilleshiem's testimony for each of the counts on which she sought, but was refused, an entrapment instruction. The state argues that Hilleshiem's testimony on seven of the counts shows "an irredeemable lack of evidence of governmental induce-

---

[8] We agree with the state that Hilleshiem misconstrues the trial court's statements concerning the harm that cocaine has caused in Milwaukee to arrive at this conclusion.

ment." As to the remaining count (six), the state argues that Hilleshiem failed to present enough evidence of inducement to get the entrapment issue to the jury.

Hilleshiem argues that the inducements offered to her by the police over the ten-month period in which the alleged offenses occurred should not be viewed in the context of each offense, but in the context of the continuing relationship between Hilleshiem and the undercover agent who participated in each of the deliveries with which Hilleshiem is charged. I agree with Hilleshiem's approach.

That approach takes into account several very important facts. First, the undercover agent, Steve Owen, arranged to meet Hilleshiem; she did not contact him. Second, Owen befriended Hilleshiem: he stayed overnight at her house frequently; he gave her money for groceries; he bought her flowers; he picked up her son for her from a roller rink; and he told her he was going to sponsor a band for her, fulfilling her lifetime dream of having a career in music. Third, from the outset, Owen induced Hilleshiem to obtain unlawful drugs for him by sharing the drugs with her or giving her money to obtain her own drugs. Owen knew that Hilleshiem was a cocaine addict. Hilleshiem overdosed on cocaine in June 1988 and her family reported the incident to the Richland Center police. Hilleshiem herself went to the chief of police in the summer of 1988 because her dealer had been threatening to kill her if she didn't pay him the money she owed him for cocaine. An August 1988 intelligence report described Hilleshiem's problems with cocaine addiction and her unsuccessful efforts at recovery. Her parents had talked to the police several times about Hilleshiem's problem with cocaine. They gave the police names of people who were supplying her with cocaine and begged the police to do something about it.

The police chief was present on an occasion in the summer of 1988, when Hilleshiem's mother received a call from Hilleshiem's dealer; he heard Hilleshiem's mother beg the dealer to stop selling drugs to Hilleshiem. On one occasion, Hilleshiem's father asked Owen personally not to lend money to his daughter because of her cocaine addiction.

Prior to the course of conduct initiated by Owen, Hilleshiem had a single prior involvement on a drug-related offense.[1] She was not "the unwary criminal," suggested by the state. *See Sherman v. United States*, 356 U.S. 369, 372-73 (1958).

Hilleshiem introduced expert medical testimony that she could not control her addiction. As Hilleshiem notes, there is no longer any doubt that cocaine is the most severely addictive drug of abuse. *See, e.g.,* COCAINE: A SYMPOSIUM, *Proceedings of Wisconsin Institute on Drug Abuse and National Institute on Drug Abuse, April.17-19* (C. Brink ed. 1985).

"Entrapment is a defense available to a defendant who has been induced by law enforcement to commit an offense which the defendant was not otherwise disposed to commit." *State v. Pence*, 150 Wis. 2d 759, 765, 442 N.W.2d 540, 542 (Ct. App. 1989). Wisconsin has adopted the subjective "origin of intent" doctrine, rather than an objective test. *Id.* "The subjective test focuses on the reason for the defendant's state of mind which led to the intent to commit the crime, *i.e.*, whether the police conduct affected or changed a particular defendant's state of mind." *Id.*, 442 N.W.2d at 542-43. There is ample evidence that Hilleshiem was not disposed to commit the offense of delivery of a controlled substance.

---

[1] In 1981, Hilleshiem was fined for possession of marijuana.

"Once there is some evidence that the government induced the defendant to commit the crime, the question of entrapment becomes a factual one for the jury . . .." *United States v. Timberlake*, 559 F.2d 1375, 1379 (5th Cir. 1977). "In that situation the defendant is entitled to have his [or her] defensive theory of the case put before the jury with appropriate instructions from the trial judge." *Id.* Wisconsin follows the same rule. *State v. Skaff*, 152 Wis. 2d 48, 59, 447 N.W.2d 84, 89 (Ct. App. 1989) ("A defendant is entitled to a theory of defense instruction if it is timely requested and supported by credible evidence."). I conclude that Hilleshiem's defense on an entrapment theory is amply supported by the evidence and she was entitled to an instruction on that defense.