STATE of Wisconsin, Plaintiff-Respondent,

v.

Johnathan BRITT, Defendant-Appellant. †

Court of Appeals

*No. 95–0891–CR. Submitted on briefs April 16, 1996.—Decided June 12, 1996.*

(Also reported in 553 N.W.2d 528.)

† Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the brief of *John P. Casey* of *Foley & Casey* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *David J. Becker* assistant attorney general.

Before Anderson, P.J., Brown and Nettesheim, JJ.

NETTESHEIM, J. Johnathan Britt, who stands convicted of attempted first-degree intentional homicide and aggravated battery with a dangerous weapon, appeals the trial court's order permitting the impanelment of an anonymous jury. Because the record supports the court's determination that the jury needed the protection of anonymity and because the court took reasonable precautions to otherwise protect Britt's right to a fair and impartial jury, we affirm the court's ruling.

Britt also appeals the trial court's evidentiary ruling permitting the victim to testify that in a telephone conversation with an unidentified caller, he was offered cocaine worth approximately $5000 in exchange for refusing to testify against Britt. Although we agree with Britt that the victim's testimony was inadmissible hearsay, we conclude that its admission was harmless.

We therefore affirm the judgment of conviction and the order denying postconviction relief.

### BACKGROUND

The State filed a complaint alleging that on September 15, 1993, Britt and his fellow gang members assaulted the victim in the main hallway of a commu-

29

nity center in Racine. The complaint alleged that Britt fired the shot that severed the victim's spinal cord, resulting in his permanent paralysis. The episode emanated from a previous incident in which the victim was accused of shooting Britt. Britt pleaded not guilty and the case proceeded to a jury trial.

Prior to jury selection, the State requested the trial court "to allow an anonymous jury panel." Specifically, the State requested that the names of the potential jurors, or other information which might identify a potential juror, not be revealed during voir dire. In support, the State noted that the charges against Britt stemmed from gang-related activity and that prospective witnesses had been intimidated. The State presented police reports in support of these statements.

Over Britt's objection, the trial court granted the State's request. The court ruled that during voir dire, the names, addresses and places of employment of the potential jurors could not be publicly revealed in open court and on the record. However, in order to assure Britt's right to a fair and impartial jury, the court permitted the parties to review the written questionnaires which the potential jurors had previously supplied. The court directed that at the conclusion of the jury selection, the parties were to surrender the questionnaires to the court clerk, who would then retain them under seal.

During the trial, the trial court allowed the State to present testimony by the victim that he had received a telephone call from an unidentified female offering him cocaine worth approximately $5000 in exchange for his refusal to testify against Britt. The trial court admitted the testimony, rejecting Britt's hearsay objection.

The jury convicted Britt of attempted first-degree intentional homicide, contrary to §§ 939.32, 939.63 and 940.01(1), STATS., and aggravated battery with a dangerous weapon, contrary to §§ 939.63 and 940.19(2), STATS. The court sentenced Britt to consecutive terms of twenty-five years in prison for attempted homicide and fifteen years for aggravated battery. Britt appeals from the judgment and the order denying postconviction relief.

DISCUSSION

*Anonymous Jury*

■

No reported Wisconsin case has addressed the issue of an anonymous jury. Thus, an examination of case law in other forums is necessary. A jury is "anonymous" when the trial court withholds, or bars the revelation of, information which would identify the jurors. *United States v. Crockett,* 979 F.2d 1204, 1215 n.10 (7th Cir. 1992) (collecting cases), *cert. denied,* 507 U.S. 998 (1993).[1] Such information may include the jurors' names, addresses, places of employment, ethnic backgrounds and religions. *Id.*

---

[1] The type of identifying information withheld about individual jurors has varied depending upon the particular concerns presented by the case. *See United States v. Tutino,* 883 F.2d 1125, 1133 (2nd Cir. 1989) (jurors' names, addresses and workplaces withheld), *cert. denied,* 493 U.S. 1081, *and cert. denied sub nom. Guarino v. United States,* 493 U.S. 1082 (1990); *United States v. Scarfo,* 850 F.2d 1015, 1017 (3rd Cir.) (jurors' names and addresses withheld), *cert. denied,* 488 U.S. 910 (1988); *United States v. Barnes,* 604 F.2d 121, 142 (2nd Cir. 1979) (jurors' names, addresses, religions and ethnic backgrounds withheld), *cert. denied,* 446 U.S. 907 (1980).

Although rare, anonymous juries have been used in criminal trials, most often in cases involving organized crime, drug-related activity or gang activity. The use of an anonymous jury has been approved if it is necessary to protect potential jurors and their families from harassment, intimidation, bribery, publicity and other potential interferences that might make an individual fearful or otherwise apprehensive about participating in such trials.[2] *See id.; State v. Flournoy,* 535 N.W.2d 354, 361 (Minn. 1995) (court concerned about potential publicity and need to preserve jury impartiality during gang-related murder trial), *cert. denied,* 116 S. Ct. 972 (1996).

Although the right to exercise peremptory challenges is not constitutionally guaranteed, those challenges have been the traditional means of assuring the selection of an unbiased jury. *Batson v. Kentucky,* 476 U.S. 79, 91 (1986). The range of information provided by voir dire impacts on a party's ability to exercise peremptory strikes. *See Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 623-24 (1991). The trial court is accorded ample discretion in determining the best method for conducting voir dire. *Rosales-Lopez v. United States,* 451 U.S. 182, 189 (1981). This includes broad discretion over the form and number of questions to be asked. *State v. Koch,* 144 Wis. 2d 838, 847, 426 N.W.2d 586, 590 (1988). We examine the trial court's decision regarding voir dire for a misuse of discretion,

---

[2] Notwithstanding the historical requirement of openness at every phase of a trial proceeding, the United States Supreme Court has acknowledged that in an appropriate case, "a valid privacy right may rise to a level that part of the transcript should be sealed, or the name of a juror withheld." *Press-Enterprise Co. v. Superior Court,* 464 U.S. 501, 512 (1984).

keeping in mind that the court's broad discretion "is subject to the essential demands of fairness." *See id.*

On a threshold basis, the State contends that the jury in this case was not anonymous. The State bases this argument on the fact that although the parties were prohibited from publicly inquiring about certain juror information during voir dire, the parties nonetheless had access to the restricted information via the juror questionnaires. While this is so, we conclude that the jury in this case was an anonymous jury. We so hold because, despite access to the jurors' questionnaires, the public process of jury selection in this case was nonetheless restricted. The trial court's ruling prevented the parties from revealing in open court the kind of juror information which otherwise is routinely probed during jury selection.

Pursuant to § 757.14, STATS., subject to certain limited exceptions, "The sittings of every court shall be public and every citizen may freely attend the same . . .."[3] In *State ex rel. La Crosse Tribune v. Circuit Court*, 115 Wis. 2d 220, 340 N.W.2d 460 (1983), the supreme court held that an in camera voir dire proceeding constituted a "sitting of the court" under this statute.[4] *Id.* at 233, 340 N.W.2d at 466. While the trial court in this case did not close the courtroom, it nonetheless restricted the flow of pertinent information about the potential jurors. We see little difference

---

[3] The Wisconsin Constitution also accords an accused in a criminal case the right to a "speedy public trial by an impartial jury." WIS. CONST. art. I, § 7.

[4] The supreme court went on to hold that the trial court misused its discretion by selecting the jury in an in camera proceeding. *State ex rel. La Crosse Tribune v. Circuit Court*, 115 Wis. 2d 220, 237-40, 340 N.W.2d 460, 468-69 (1983).

between a voir dire process conducted in camera which bars the public from hearing relevant information concerning potential jurors and a voir dire process conducted in open court but which bars the parties from revealing such information. We therefore conclude the jury in this case was anonymous.[5]

We thus move to the substantive issues: whether Wisconsin law should recognize an anonymous jury, and, if so, whether the trial court in this case properly exercised its discretion in allowing an anonymous jury to be impaneled.

██

Citizen jurors are an integral part of the criminal justice system. Without appropriate protections regarding their identities, jurors may be reluctant to serve in a given case. And even if they do serve, their decisions may be influenced by the lack of such protections rather than by the evidence. We conclude that a trial court should have the power to take necessary steps to assure the protection of the jurors so that they may perform their role without distraction, interference or concern. We therefore hold that, in the appropriate case and in the proper exercise of discretion, a trial court may take reasonable steps to protect the identity of potential jurors in a criminal case.

Next, we consider whether the trial court properly exercised its discretion in this case by impaneling an anonymous jury. The jurisdictions recognizing restrictions on jurors' identities have held that a court should not impanel an anonymous jury without first "concluding that there is strong reason to believe the jury needs protection." *Crockett*, 979 F.2d at 1215 (quoted source omitted); *see Flournoy*, 535 N.W.2d at 362.

---

[5] We also observe that the record is unclear as to whether Britt personally had access to the restricted information.

34

The trial court concluded that the jury in this case required the protection of anonymity. In support of its ruling, the court cited a number of pretrial events. First, as the victim was walking near a restaurant with another person, the driver of a car pulled up alongside them on the street and pointed a gun. Second, as the victim was entering a public office building, someone drove past and pointed a gun at him. The victim later identified the people involved in both occurrences as the same individuals who had attacked him at the community center. Third, two witnesses at the preliminary hearing admitted that they did not want to give statements because they feared for their safety and that of their families. Fourth, yet another witness stated that while he was in court on an unrelated traffic matter, someone approached him and said, "[T]ry to get your name off the court list. We got no problem with you, so get your name off the list."

The trial court reasoned that this pattern of victim intimidation presented sufficient grounds to reasonably believe that the jury might also be subject to tactics of fear and intimidation. We agree. We reject Britt's argument that the court's ruling was error because the evidence did not show that he was personally responsible for these acts. We hold that the critical inquiry is whether the jury needs the protection of anonymity, not who created the need. Attempts by a defendant's associates (or others) to intimidate witnesses by threats or assaults are relevant when determining whether there is a strong reason to believe the jury needs protection. *See United States v. Edmond,* 52 F.3d 1080, 1092 (D.C. Cir.), *cert. denied,* 116 S. Ct. 539, *and cert. denied sub nom. Sutton v. United States,* 116 S. Ct. 539 (1995); *cf. State v. Bowles,* 530 N.W.2d 521, 531

(Minn. 1995) (once evidence was admitted that the victim's murder was retaliatory in nature, jurors could have reasonably concluded that were they to convict the defendant, they or their families would be vulnerable to harassment or retaliation from gang members), *cert. denied*, 116 S. Ct. 1050 (1996). Based on the evidence before the court, we conclude that the court did not misuse its discretion in determining that the jury needed protection.

We next consider whether the trial court took reasonable precautions to minimize any prejudicial effect to Britt and to ensure that his fundamental rights to a fair and impartial jury were protected. *See Crockett*, 979 F.2d at 1215; *Flournoy*, 535 N.W.2d at 362. The courts have varied as to how relevant information regarding juror identification may be restricted. For example, in *United States v. Scarfo*, 850 F.2d 1015, 1017 (3rd Cir.), *cert. denied*, 488 U.S. 910 (1988), the parties were not permitted during voir dire to inquire into relevant juror identifying information. However, they were provided access to the juror questionnaires which provided general identifying information (for example, the nature of employment and general neighborhood of residence). *Id.* In *Flournoy*, 535 N.W.2d at 361, only the attorneys, the judge and the court staff knew the names, addresses and phone numbers of the jurors. Otherwise, the jurors remained anonymous and were referred to only by an assigned number during an eight-day voir dire process. *Id.*

In this case, although barring the parties from revealing in open court and on the record certain specific information regarding the potential jurors' identities, the trial court did allow the parties to ask certain general questions regarding the jurors' residences and types of employment. For example, the trial

36

court stated that the parties would be able to ask jurors whether they lived "on the north side or the south side or downtown or . . . the Burlington area . . . so there can be a general idea of . . . where a person lives without knowing the specific address on the house." The court allowed the parties to inquire whether a juror was or was not employed and what type of job that person had, but cautioned that the person's place of employment "should not be brought out here in court and on the record."[6] Most importantly, the trial court had allowed the parties prior access to the written questionnaires which the potential jurors had previously completed.[7] Only after voir dire was completed did the trial court direct that the questionnaires be returned to the custody of the court and sealed.

■

Thus, the restrictions imposed by the trial court in this case were minimal. The court prudently balanced the jury's need for identity protection against Britt's right to a fair and impartial jury. Preventing references on the record to the jurors' names, addresses and employers was within the trial court's discretion. *See United States v. Tutino,* 883 F.2d 1125, 1133 (2nd Cir. 1989) (so long as a defendant's substantial rights are protected by a voir dire designed to uncover bias, reasonable limitations on the questioning should not be disturbed on appeal), *cert. denied,* 493 U.S. 1081, *and cert. denied sub nom. Guarino v. United States,* 493 U.S. 1082 (1990). We conclude that these restrictions did not improperly intrude upon Britt's ability to sufficiently obtain relevant information regarding the

---

[6] Beyond these restrictions, the trial court did not otherwise limit voir dire.

[7] In fact, Britt's trial counsel had brought a motion to strike the jury panel based on the information in the questionnaires.

potential jurors. As such, the court took "reasonable precautions to minimize any prejudicial effects" on Britt, *see Crockett,* 979 F.2d at 1215, and the court did not err in the exercise of its discretion.

### *Out-of-Court Statement*

Britt next contends that the trial court erred when it allowed the victim to testify that an unidentified female caller offered him cocaine worth approximately $5000 in exchange for his refusal to testify against Britt. This evidence followed the testimony of Larry Cook, a fellow jail inmate of Britt's. Cook had testified to a conversation he had with Britt in which Britt admitted that he had shot the victim and that he was arranging to have his sister pay two people $1000 each to testify.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Section 908.01(3), STATS. Hearsay evidence is generally not admissible except as otherwise provided by rule or statute. *See* §§ 908.02, .03, STATS. The hearsay rule is inapplicable to out-of-court assertions if the statement is not offered to prove the truth of the matter asserted. *Caccitolo v. State,* 69 Wis. 2d 102, 107, 230 N.W.2d 139, 142 (1975); *see State v. Hilleshiem,* 172 Wis. 2d 1, 19, 492 N.W.2d 381, 388-89 (Ct. App. 1992), *cert. denied,* 113 S. Ct. 3053 (1993); *see also* § 908.01(4). We review a trial court's decision to admit or exclude evidence for a misuse of the court's discretion. *See Nischke v. Farmers & Merchants Bank & Trust,* 187 Wis. 2d 96, 105, 522 N.W.2d 542, 546 (Ct. App. 1994).

The trial court admitted evidence of the telephone call on two grounds: (1) it rebutted a claim of recent fabrication against Cook, and (2) it constituted evidence of a conspiracy between Britt and the unidentified caller. However, the State does not defend the trial court's ruling on those grounds. Instead, the State maintains that the victim's testimony was not hearsay because it "was not offered to show that the person offering the cocaine worth $5000 would have given the victim the cocaine had the victim in fact declined to testify, but only to show that an attempt to bribe the victim had been made." The State argues that the testimony was offered "to bolster the credibility of [Britt's] fellow jail inmate, Larry Cook, who testified that [Britt] had admitted shooting the victim" and that Britt had stated to Cook that he was going to have his sister pay two people $1000 each to testify.

While we agree with the State that the evidence bolstered Cook's credibility, we disagree with the State's argument that such did not serve to prove the truth of the matter asserted. Cook had testified that Britt stated he would attempt to bribe witnesses. The State was properly allowed to introduce this damaging testimony as an admission against interest by Britt. *See* § 908.01(4)(b), STATS. This statement constituted substantive evidence of Britt's intent to attempt to bribe witnesses.

The victim's testimony about the statements made to him by the unidentified female caller demonstrated Britt's continuing attempt to carry out this scheme.[8] In fact, the State's brief makes this very concession, argu-

---

[8] Unlike Cook, the unidentified female declarant was not a testifying witness who was subject to cross-examination. *See* § 908.01(4)(a), STATS.

ing that the evidence was admissible "to show that an attempt to bribe the victim had been made." Thus, by the State's own admission, this testimony did not merely show that the telephone call had been made; it also substantively showed that Britt was attempting to carry out his plan to bribe witnesses.[9]

In support of its argument, the State relies on *Hilleshiem*, where the court of appeals ruled that threats made against a witness were admissible not to prove the truth of the matter asserted, but to demonstrate why the witness had testified in other cases using an alias. *See Hilleshiem,* 172 Wis. 2d at 19, 492 N.W.2d at 388. However, *Hilleshiem* supports, rather than undermines, our holding because in *Hilleshiem* evidence of the threats served to explain why the witness had previously testified under an alias. *See id.; see also State v. Wilson,* 160 Wis. 2d 774, 779, 467 N.W.2d 130, 132 (Ct. App. 1991) (statement should have been received to establish defendant's belief that he had consent to enter dwelling); *cf. Badger Produce Co. v. Prelude Foods Int'l,* 130 Wis. 2d 230, 235-36, 387 N.W.2d 98, 101-02 (Ct. App. 1986) (testimony of customer complaints about frozen crab not admitted to establish that

---

[9] The State seems to contend that because the telephone call revealed an intent to bribe, as opposed to an actual bribe, the statements by the nontestifying declarant were not hearsay. However, evidence of an intent, or an attempt, to bribe is just as substantive as a bribe itself. Thus, the hearsay statement was not offered to merely establish that the telephone call was made. It was offered to show an attempted bribe and, as such, bolstered Cook's credibility, who had previously testified to the same effect. The State fails to grasp this distinction. So did the court which decided the case cited by the State in support of its argument. *See State v. Jaynes,* 645 A.2d 1060 (Conn. App. Ct. 1994).

crab was substandard, but only to show that complaints were made *and that the buyer acted in response to those complaints*). Here, the disputed evidence did not serve to explain any prior, concurrent or subsequent conduct or belief by any person.

Notwithstanding our conclusion, we hold that the admission of this hearsay evidence was harmless. An evidentiary error is subject to a harmless error analysis and requires reversal or a new trial only if the improper admission of evidence has affected the substantial rights of the party seeking relief. *Nischke,* 187 Wis. 2d at 108, 522 N.W.2d at 547; *see* § 805.18(2), STATS. Under this test, we will reverse only where there is a reasonable possibility that the error contributed to the final result. *Nischke,* 187 Wis. 2d at 108, 522 N.W.2d at 547. In making this determination, we weigh the effect of the inadmissible evidence against the totality of the credible evidence supporting the verdict. *See Tim Torres Enters. v. Linscott,* 142 Wis. 2d 56, 78, 416 N.W.2d 670, 679 (Ct. App. 1987).

The jury heard eyewitness testimony that Britt shot and injured the victim. The jury also heard evidence of motive: the victim testified that he had just been released from jail the same day that Britt and his companions at the community center accused him of a shooting that had recently occurred. The victim also stated that Britt walked past him with his hands in his coat and said, "You're going to burn." At that point, another individual hit the victim in his face with his fist before Britt and three others joined him in attacking the victim for approximately three to five minutes. The victim testified that when they had finished beating him and he attempted to get up, Britt ran to his side and shot him from closer than an arm's-length dis-

tance. The victim's cousin gave corroborating testimony that he was standing near the front desk of the community center during the altercation and saw Britt shoot the victim. In addition, Cook testified that Britt admitted the shooting to him.

We also deem it important that the inadmissible hearsay evidence regarding the bribe attempt was cumulative to the properly admitted evidence from Cook that Britt intended to attempt to bribe potential witnesses. Moreover, we have examined the transcript of the final arguments and we note that the State never made use of the evidence which we have held inadmissible. In light of the abundant evidence in support of the jury's verdict, and in light of the minor role which the inadmissible evidence played, we hold that the error was harmless. *See id.* at 79, 416 N.W.2d at 679.

*By the Court.*—Judgment and order affirmed.